ELM SPRINGS CANNING COMPANY *v.* SULLINS.

4-7359                                    180 S. W. 2d 113

Opinion delivered May 8, 1944.

*Bridges, Bridges, Young & Gregory,* for appellant.

*G. T. Sullins* and *Rex W. Perkins,* for appellee.

HOLT, J. Mrs. Hazel Sullins, on behalf of herself and her four minor children, was granted an award of death benefits under the Workmen's Compensation Law (Act 319 of 1939) by the commission on account of the death of her husband, S. L. Sullins, which she alleged resulted from injuries received by him arising out of and in the course of his employment. The commission's

award was affirmed on appeal to the circuit court. This appeal followed.

For reversal, appellants contend "that there is not sufficient competent evidence in the record to warrant the making of the award, because the injuries from which Sullins died were solely caused by his intoxication, Sullins was so intoxicated as to be incapable of performing his duties and could not be said to have been acting in the course of his employment, and the commission's finding that the accident was caused by the employment, rather than by other possible causes equally compatible with the evidence, rests altogether upon speculation and conjecture."

Section 5 of the act provides: "Every employer subject to this act shall in accordance therewith secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury; provided, that there shall be no liability for compensation under this act when the injury has been solely occasioned by intoxication of the injured employee while on duty or by willful intention of the injured employee to bring about the injury or death of himself or another." And § 24 provides: "In any proceeding for the enforcement of a claim for compensation under this act, there shall be a *prima facie* presumption, .. . . (4) that the injury did not result from the intoxication of the injured employee while on duty, etc."

The facts most favorable to the commission's findings and award are: August 6, 1942, S. L. Sullins, the deceased, and James Hargis, employees of appellant, Elm Springs Canning Company, at about 10 o'clock a. m., left Fayetteville in one of appellant's empty trucks to go to Memphis, Tennessee, for a load of empty tin cans. Sullins, who had been in the employ of the canning company for about four years, was 48 years of age, and Hargis was 17 years of age. The distance to Memphis via Little Rock was about 325 miles. Sullins drove to Clarksville, where he was relieved by Hargis, who drove

to Little Rock. At Little Rock Sullins again resumed driving and drove to DeValls Bluff, where he got out of the truck and phoned to Memphis to the Continental Can Company and informed it that they would be there shortly to receive the cans. They reached DeValls Bluff at about 8 p. m., and at this point, two strangers, "hitchhikers," were invited to ride by Sullins, and he and the two hitchhikers got in the rear, or trailer part of the truck. Hargis resumed driving until they reached the weighing station near Brinkley. At this point, Sullins again resumed driving, but after proceeding for a few miles, Hargis took over and Sullins got back in the trailer with the hitchhikers. At about 10:30 p. m., Hargis heard a knocking signal from inside the trailer, stopped the truck, and was told by the two hitchhikers, who had gotten out of the truck, that Sullins "had gone out the back end of the truck," and that Sullins had said before going out, "Turn out the lights," and "I'll turn out the lights." The truck had no doors or end-gates at the back. Hargis found Sullins back several hundred yards by the side of the highway, so severely injured that he died shortly thereafter. The two strangers disappeared and their testimony was not available.

One of the principal reasons that appellant, Canning Company, put two men on the truck was to provide for alternate driving. A pallet of quilts had been provided in the trailer, where one might sleep or rest while the other drove. Before leaving Fayetteville, Sullins obtained a half-pint of cherry liquor, which he drank. At Mountainburg, he procured a pint of apricot liquor, which he consumed before reaching Little Rock, and at Little Rock, obtained another pint of apricot liquor, and according to the testimony of young Hargis, Sullins had consumed about three-fourths of this last pint of liquor by the time they reached DeValls Bluff.

Here we adopt the following summation of Hargis' testimony by the commission: "Hargis testified that when Sullins got in the back of the truck near Brinkley he did so for the purpose of resting or sleeping, but the witness did not see the accident as he was driving the

truck and does not know how the deceased met his death, but when Sullins got in the trailer with the hitchhiker boys at DeValls Bluff, he seemed fairly normal and was able to drive the truck fairly well; that when the deceased attempted to again drive the truck near Brinkley he weaved the truck some and did not act too normal, but did not seem to be drunk. When asked why the deceased weaved the truck, witness stated, 'We were talking and I was trying to get him to let me drive. I knew we were getting close to Memphis and I knew he had been drinking. He drove across the line two or three times and I got him to stop. He stopped the truck on the left side of the pavement.' Witness testified that during all the trip from Fayetteville to DeValls Bluff while the deceased drove, he drove the truck all right, and that he would not say that Sullins was not able to have driven the truck on into Memphis; that getting on the wrong side of the pavement could have been due to intoxication and could not have been due to intoxication. . . . that at DeValls Bluff, Sullins, in the interest of the employer, called the Canning Company at Memphis telling the Canning Company that they were coming in for a load of cans; that he intended that Sullins should drive back from Memphis. . . His final opinion was that the deceased was somewhat intoxicated but not drunk.''

The testimony further showed that the deceased had driven all the way from Fayetteville to Clarksville and again from a point about 15 miles west of Little Rock to DeValls Bluff, or he had driven about two-thirds of the way from Fayetteville to the point of the accident.

The issues presented primarily present questions of fact for our determination. At the outset, we must bear in mind certain rules of construction placed upon the Workmen's Compensation Law by this court. ''Findings of fact made by the Workmen's Compensation Commission are, on appeal, given the same verity as attach to the verdict of a jury, and this applies on appeal to the circuit court as well as to the Supreme Court from the circuit court.'' *J. L. Williams & Sons, Inc., v. Smith*, 205 Ark. 604, 170 S. W. 2d 82, headnote 2.

"In testing the sufficiency of the evidence before the commission, the circuit court, on appeal from the commission, and this court, on appeal from the circuit court, must weigh the testimony in its strongest light, in favor of the commission's findings." *Hughes* v. *Tapley, Administratrix,* 206 Ark. 739, 177 S. W. 2d 429.

"Likewise, all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical constructions. . . We quote from the decision of the Montana court in *Wirta* v. *North Butte Mining Co.,* 64 Mont. 279, 210 Pac. 332, 30 A. L. R., 964: 'The word "employment," as used in the Workmen's Compensation Act, does not have reference alone to actual manual or physical labor, but to the whole period of time or sphere of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do.' " *Hunter* v. *Summerville,* 205 Ark. 463; 169 S. W. 2d 579.

As indicated, § 24 of the act makes a *prima facie* presumption against the injury resulting from intoxication. The burden is clearly upon appellant to show, by the testimony, that Sullins' death resulted solely from his intoxicated condition. The commission found that his death was not caused solely by his intoxication and that it grew out of and in the course of his employment. After a careful review of all the evidence, we cannot say, as a matter of law, that there was no substantial evidence upon which the commission based its findings and award to appellees.

The rule where the defense of intoxication is used is stated in 71 C. J., p. 770, § 483, as follows: "Under a statute requiring compensation, except when the injury results solely from the intoxication of the injured employee while on duty, if intoxication of the employee is relied on as a defense, it must be made to appear that the accident which resulted in the injury for which compen-

sation is sought was caused solely and exclusively by the intoxication of the employee.''

We think the word ''solely'' as used in § 5 of the act, *supra,* means exclusive of all other causes. Webster defines ''solely'': ''exclusively; to the exclusion of other purposes; entirely; wholly,'' and as indicated, we cannot say, as a matter of law, that appellants have met the burden which required them to show that Sullins' death was caused solely by his intoxication.

At the time the deceased, Sullins, went into the trailer of the truck to rest on the quilts which his employer had provided for that purpose, he had, according to the testimony, driven the truck approximately two-thirds of the distance from Fayetteville. It thus appears that, notwithstanding his drinking, he had done his full share, if not more, of the driving and had not failed to perform any duty, for his employer, which he was called upon to perform. At DeValls Bluff, Sullins, in furtherance of the interest of his employer, sought out a telephone and informed the Memphis branch of the Continental Can Company that the truck was coming in for a load of cans. Just how the deceased fell out of the truck, the evidence does not disclose. There was no eyewitness. To assume that his intoxication was the sole cause of his falling from the truck and resultant death would be a presumption in the teeth of a statutory presumption to the contrary.

As we have indicated, the burden is clearly upon appellant to show that intoxication was the sole cause of Sullins' fall and resulting death, and we cannot say, as a matter of law, that there was no substantial evidence to support the commission's finding that appellant has failed to overcome the burden imposed. Accordingly, the judgment is affirmed.