TINSMAN MANUFACTURING COMPANY, INC., *v.* SPARKS.

4-8172                                          201 S. W. 2d 573

Opinion delivered April 21, 1947.

*M. J. Harrison*, for appellant.

*J. R. Wilson*, for appellee.

Ed. F. McFaddin, Justice. This appeal challenges an award made by the Workmen's Compensation Commission. The principal question is: Did the death of the employee (Sparks) arise out of and in the course of his employment? An incidental question concerns interest on compensation awards.

.The facts—viewed in the light most favorable to the commission's award—may be summarized as follows: The Tinsman Manufacturing Company employed crews to go into the woods and cut timber to be hauled to the mill. The superintendent in charge of the timber-cutting crews was called the "woods superintendent." W. E. Sparks was employed as a saw filer by the Tinsman Manufacturing Company. He lived about 2½ miles west of Tinsman, Arkansas, and his duties placed him under the "woods superintendent." Sparks was transported on a company bus or truck from his home to his place of work, and return. He was paid by the hour, and his pay-time began when he left home in the morning, and continued until he returned at night. In addition, he sometimes took saws home and filed them at night, keeping his own time, and being paid for this work.

On the morning of September 29, 1944, W. E. Sparks entered the company bus at his home, to be transported to a tract of timber located about 15 miles south of Hampton, where he and the other employees in the bus were to work that day. The bus driver was directed and authorized by the woods superintendent to stop the bus at any place, either going to or returning from work, on the request of any employee, and to wait until such employee made personal purchases, such as groceries, tobacco, etc. This was on company time, and was authorized and permitted by the woods superintendent. On the day in question the journey necessitated going through

the town of Hampton. Mr. Sparks was a constant user of smoking tobacco; and that fact was well known. When the bus reached Hampton, Mr. Sparks asked the bus driver to stop long enough for Sparks to purchase some smoking tobacco. The bus driver stopped in front of a cafe in Hampton, and Sparks alighted to cross the highway to make his purchase. As he was crossing the highway, he was struck and killed by a vehicle owned and operated by a third person not a party to this present appeal.

Appellees (claimants) are the widow and dependents of W. E. Sparks. They filed claim for compensation under the Workmen's Compensation Law. Appellants are the employer and its workmen's compensation insurance carrier. Appellants resisted the claim on the contention that Sparks' death did not arise "out of and in the course of employment" as those words are used in our Workmen's Compensation Law (see § 2(f) of Act 319 of 1939). After an extensive hearing, the Workmen's Compensation Commission made an award for the claimants. It is for this reason that we review the facts in the light most favorable to support the award. See *J. L. Williams & Sons* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82; *Elm Springs Canning Co.* v. *Sullins*, 207 Ark. 257, 180 S. W. 2d 113, and other cases collected in West's Arkansas Digest, "Workmen's Compensation," § 1939. The circuit court affirmed the award; and the employer and its insurance carrier have appealed to this court.

I. *Did Sparks' Death Arise Out of and in the Course of His Employment?* Appellants admit that, if Sparks had suffered casualty while on the bus, the appellants would have been liable; but appellants urge that, when Sparks left the bus to cross the highway to purchase smoking tobacco, then he deviated from his employment and his death did not arise "out of and in the course of his employment." To support their position, appellants have furnished us with a splendid brief, listing and discussing the following cases claimed to sustain their contention: In re *Betts*, 66 Ind. App. 484, 118 N. E. 551; *Cas-*

*ualty Indemnity Exchange* v. *Industrial Commission,* 190 Calif. 433, 213 Pac. 257; *Morgan* v. *United Taxi Co.,* 105 Ind. App. 304, 14 N. E. 2d 736; *Toombs* v. *Liberty Mutual Ins. Co.,* 173 Tenn. 38, 114 S. W. 2d 785; *Clark* v. *Voorhees,* 231 N. Y. 14, 131 N. E. 553; *Southern Surety Co.* v. *Galloway,* 89 Okla. 45, 213 Pac. 850; *Gardner* v. *Employers' Liability Assurance Corp.,* 247 Mass. 308, 142 N. E. 32; *Free* v. *Indemnity Ins. Co.,* 177 Tenn. 287, 145 S. W. 2d 1026; *Hornby's case,* 252 Mass. 209, 147 N. E. 577; *Carlestrom's case,* 264 Mass. 493, 162 N. E. 893; *Dubbert* v. *Beucus,* 96 Ind. App. 390, 185 N. E. 311; *Hill* v. *Dept. of Labor,* 173 Wash. 575, 24 Pac. 2d 95; *Labbe* v. *American Brass Co.,* 132 Conn. 606, 46 At. 2d 339; *Hayes* v. *Industrial Commission* (Ohio), 60 N. E. 2d 492.

We have studied each of these cases, and—aside from Hornby's case, *supra,* and the case of *In re* Betts, *supra*—we find two decisive facts present in the case at bar that were not present in any of the cases cited by the appellant. It is the concurrence of these two decisive facts that distinguish the case at bar from the cases relied on by the appellant. These facts are: Not only was Sparks "on company time," but the appellant (acting through its woods superintendent) had all the time, and with full knowledge, permitted Sparks and other employees to stop the bus and make individual purchases. In so doing, the employer permitted Sparks and the other employees to pursue a course of procedure that cannot be held to be such a deviation from the employment, as to remove Sparks from the protection of the Workmen's Compensation Law. In other words, whatever deviation there might have been, was too slight to release the appellants from the coverage afforded Sparks as an employee.

In Horovitz on Workmen's Compensation, p. 112, this appears:

"Must the injury arise out of the main work which produces the employee's wages? If hired to cut wood, or run a machine, does the protection cease when he goes for a drink of water to a near-by water-cooler placed there for that purpose? Or does the right to an award cease

if, acting on an impulse of nature, he goes to the toilet and is injured on the way thereto or because of a defect in that room? Or if he is eating an employer-provided lunch, as permitted or required by the employer or by the nature of the employment, and he suffers food poisoning—does that arise 'out of' his employment?

"These acts of personal ministration are universally recognized as *incidents of the employment.* Incidents of the employment, say most states, are as well protected as the injuries on the main job; and so saying, the courts begin to disagree as to what are incidents."

Then, after citing numerous cases, in some of which the acts of personal ministration were recognized as incidents of the employment, and in others in which the acts of personal ministration were considered as turning aside from the employment, the text (Horovitz) continues:

"So, too, getting fresh air, smoking, resting, eating food or ice cream, quenching thirst, . . . have been held compensable incidents ('contractual,' 'reasonable,' or just plain 'incidents') of one's employment; . . .

"But slight *deviations* are no defense under most state decisions. Thus a slight deviation to get a chew of tobacco, or to ask a fellow employee the time, or to throw away a cigarette, is harmless, and awards were upheld where the injury occurred during the deviation."

The paragraph last quoted above is the one that applies directly to the case at bar.

In the case of *Ry. Express Agency* v. *Lewis,* 156 Va. 800, 159 S. E. 188, 76 A. L. R. 350, the Virginia Supreme Court of Appeals had before it a case involving facts somewhat similar to the case at bar. There, Lewis was a truck driver for the express agency, and obtained the consent of his employer to make a short deviation from the truck route so that Lewis might engage in a personal errand. This deviation was so slight that the Virginia court held that the injuries Lewis sustained arose "out of and

in the scope of his employment,'' even though it was while he was on the personal errand that he was killed.

There is an annotation in 76 A. L. R. 356 on the subject, ''Workmen's Compensation: Deviation on personal errand as affecting question whether injury to employee on street or highway arose out of and in the course of employment.'' It is there stated that liability ultimately depends upon the facts and circumstances of each case. Among cases allowing compensation, there is listed in the annotation the following: *Beaudry* v. *Watkins* 191 Mich. 445, 158 N. E. 16, L. R. A. 1916F, 576, in which a delivery boy, by permission, stopped at home for lunch on his way to collect a package; *Stratton* v. *Interstate Fruit Co.*, 47 S. D. 452, 199 N. W. 117, in which a truck driver by permission drove to his home for lunch, and was injured while returning to his place of business; *Rachels* v. *Pepoon*, 5 N. J. Misc, 122, 104 N. J. L. 183 and 139 At. 923, in which a helper on a newspaper distribution truck obtained his employer's consent to attend to personal business, and was injured while returning; *Zeier* v. *Boise Transfer Co.*, 43 Idaho 549, 254 Pac. 290, in which an employee en route to a freight depot stopped for lunch, and was injured after resuming his journey; *Sztorc* v. *James H. Stansbury, Inc.*, 189 App. Div. 388, 179 N. Y. S. 586, where the employee was in the immediate vicinity of the employer's truck which had stopped but momentarily. It is interesting to note that this last-cited case was cited with approval of the New York Court of Appeals in the case of *Younger* v. *Motor Cab Transp. Co.*, 260 N. Y. 396, 183 N. E. 863. Other cases are listed and discussed in the annotation, but we mention the above to indicate that the courts and commissions have decided each of these cases on its peculiar facts; and in the various adjudications there is an ever-growing tendency to construe the acts liberally to allow compensation.

There is an annotation in 51 A. L. R. on street risks incurred in the course of employment; and it is there stated (p. 511):

"Taking the view that the compensation acts do not authorize an award in case of injury or death from a peril which is common to all mankind, or to which the public at large is exposed, the earlier cases developed what is known as the doctrine of street risks, and very generally held that an employee was not entitled to compensation for an injury occurring in the public street unless it could be shown that the workman's employment involved peculiar exposure to the perils of the street."

Then, on page 514 of the same annotation this appears:

"The tendency of the later cases towards a more liberal construction of the term 'arising out of and in the scope of the employment' is reflected in the view now most generally taken as to street risks. The majority of the jurisdictions, . . . permit the recovery of compensation where the employee received a street injury while in the course of his employment, although the employment may not have required his presence on the street continually, but only occasionally, or even on the one occasion on which he was injured; Massachusetts apparently being the only jurisdiction recently passing upon this question, to take a *contra* view." See, also, annotation on the same subject in 80 A. L. R. 126.

We quote these statements to show the present tendency towards a liberal application of the term "arising out of and in the course of employment." Of course, if a servant should go away on a private mission without the consent or permission of his employer, there would be no liability. But in the case at bar, the trip of Sparks across the street was with the consent and permission of his employer, and was a mere momentary journey to obtain smoking tobacco which would tend to increase his satisfaction in the discharge of his duties. It is almost the same situation as if he had stopped the bus to get a drink of water or answer a call of nature. It was not a great distance, nor did it consume much time, and under the facts in this case we hold that Sparks' death arose out of and in the course of his employment.

In discussing the cases cited by the appellant, we withheld discussion of *In re* Betts, *supra,* and Hornby's case, *supra.* We now advert to these cases. Hornby's case, 252 Mass. 209, 147 N. E. 577, was decided in 1925. In that case a workman, while on a journey at the express direction of his employer, received a street injury. The Massachusetts court denied him compensation in accordance with the previous Massachusetts holdings, saying:

"It has been held that an injury resulting from a collision with an automobile, moving on a public street, is not an injury which under ordinary circumstances' arises out of the employment; although at the time the employee is engaged in the employer's business."

Our case of *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579, announces a result contrary to the Massachusetts holding; so Hornby's case is not persuasive to the question here under consideration.

We come, next, to *In re* Betts, *supra.* There, the employee, while returning to work in the master's wagon, obtained the master's permission to stop to get some tobacco. While on that errand he was killed, and the appellate court of Indiana, in its opinion of January 18, 1918, held that the death of Betts did not arise out of and in the course of his employment. The facts in that case are so similar to the facts in the case at bar that no sound distinction can be drawn, but our Workmen's Compensation Law justifies a more liberal interpretation than is reflected in the case of *In re* Betts. There is abundant authority holding contrary to the Betts case, on facts almost identical. We discuss these.

In 71 C. J. 675, in discussing what acts do or do not constitute substantial deviation from employment, this appears:

"An injury sustained by an employee while procuring tobacco for his own use, being an act for his personal comfort and convenience but ultimately for the benefit of

the employer, may arise out of and in the course of the employment.''

Some of the cases which sustain the above-quoted text are:

(a) *Wickham* v. *Glenside Woolen Mills,* 252 N. Y. 11, 168 N. E. 446: An employee, after carrying spools from the spinning room, stopped on his return to ask a fellow employee for tobacco, and this request took him a few feet out of his direct course, where he slipped on a greasy floor when he started to leave his fellow-employee, and sustained injuries. It was held that his injury arose out of and during the course of his employment within the meaning of the New York Workmen's Compensation Law.

(b) *Springer* v. *North,* 205 App. Div. 754, 200 N. Y. S. 248: A teamster, delivering wood to his employer's customer, stopped in front of a store to purchase tobacco for his own use, and—while reaching for the tobacco and with one foot on the wagon wheel—he was injured by the sudden starting of the horses. The injury was held incidental to his employment, justifying an award under the workmen's compensation law.

(c) *Richards* v. *Creamer,* 267 App. Div. 928, 46 N. Y. S. 2d 769: An employee of a carnival, riding on the employer's truck in the course of moving, asked the driver to stop at a roadside so that the employee might purchase cigarettes, and, while the employee was crossing the highway, he was struck by a passing automobile and received injuries, and it was held that the injuries arose out of and in the course of his employment. Motion for leave to appeal to the court of appeals was denied in 267 App. Div. 1007, 48 N. Y. S. 2d 685, and in 293 N. Y. 937, 55 N. E. 2d 757.

(d) *McLauchlan* v. *Anderson,* decided by the English Court of Sessions, February 1, 1911, and involving the Workmen's Compensation Act of England, and reported in 1911 Session Cases 529 and 4 B. W. C. C. 376: A workman, whose duty it was to load and accompany a train of

wagons drawn by a traction engine, fell while he was in the act of dismounting from the wagon in order to recover his pipe which he had dropped, and he was run over by the wagon. The court held that, if there was any deviation from the duties of employment, such deviation was too slight to be considered, saying:

"In one sense anything a man does in connection with his own body is done for his own purpose; eating and drinking are illustrations; but these are none the less things a workman is perfectly entitled to do in the course of his employment. The Lord Chancellor (Lord Loreburn) in the course of his opinion in the case of *Moore* v. *Manchester Liners, Limited,* said this—'I think an accident befalls a man "in the course of" his employment if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time to do that thing.' Now, this man's operation of getting down from the wagon to recover his pipe seems to me to satisfy all those conditions."

In concurring, Lord MacKenzie said: "The workman was at his work, and his attempt to get down to pick up his pipe was merely an incident in the day's work."

A rational construction of our workmen's compensation statute requires a holding that a short deviation, permissively made, as to obtain tobacco, is not a "turning aside," but a mere incident in the day's work. Such is the text in Corpus Juris and the holdings in the cases discussed above, and we think such holdings are more consonant with the purpose of our compensation law than the rule announced in the case of *In re* Betts, *supra.*

We list also recent cases, in some of which the courts have held that slight deviations do not exclude the employee from the coverage of the Workmen's Compensation Law, to-wit: *Alabama Concrete Pipe Co.* v. *Berry* 226 Ala. 204, 146 S. 271; *Cal. Casualty Indemnity Exchange* v. *Industrial Accident Commission,* 21 Cal. 2d 751,

564

128 Pac. 2d 116 and 135 Pac 2d 158; *Western Pipe & Steel Co.* v. *Industrial Accident Commission,* 49 Cal. App. 2d 108, 121 Pac. 2d 35; *Gagnebin* v. *Industrial Accident Commission,* 140 Cal. App. 80, 34 Pac. 2d 1052; *Cardillo* v. *Hartford Accident & Indemnity Co.,* 71 App. D. C. 303, 109 Fed. 2d 674; *Macon Dairies* v. *Duhart,* 69 Ga. App. 91, 24 S. E. 2d 732; *Guenther* v. *Industrial Commission,* 231 Wis. 603, 286 N. W. 1; *Karl* v. *Fair Shoe Repair, Inc.,* 55 N. Y. S. 2d 1; *Fritsche* v. *O'Neill,* 147 Pa. Super. Ct. 153, 24 At. 2d 131; *Whitham* v. *Gellis,* 91 N. H. 226, 16 At. 2d 703; and *Oram* v. *Moon Co.,* 285 N. Y. 42, 32 N. E. 2d 785. See, also, annotations in 32 A. L. R. 806 and 59 A. L. R. 370, discussing workmen's compensation coverage in the case of an employee temporarily leaving the vehicle or place of employment for reasons personal to himself.

II. *Interest.* As previously stated, an incidental question argued on this appeal is, whether interest should be allowed on compensation payments, from the time the payments should have been made. W. E. Sparks died September 29, 1944, and claimants filed claim shortly thereafter. The award of the commission was not made until March 18, 1946. In view of this delay, the appellees (claimants) have, by cross appeal, asked this court to render judgment for interest on each weekly payment from the time the payments should have been made (beginning in October, 1944) until the payment be actually made.

We bypass this cross appeal, because we hold that the question is not properly presented. Here is the reason: when the commission announced its award, on March 18, 1946, no such interest (as here claimed by appellees) was awarded. Appellees did not prosecute any appeal or cross appeal to the circuit court on this question of interest. Therefore, they are in no position to raise the question in this court.

The circuit court judgment affirmed the award of the Workmen's Compensation Commission "with interest at 6% from date of final award by the commission." The appellants, in their motion for new trial in the circuit

court, did not claim that the circuit court judgment (allowing the interest as above stated) was erroneous; so, likewise, appellants cannot raise the interest question in this court. The judgment of the circuit court is in all things affirmed.