BLANKINSHIP LOGGING COMPANY *v.* BROWN.

4-8430                                                      208 S. W. 2d 778

Opinion delivered February 9, 1948.

Rehearing denied March 15, 1948.

*J. Ed Morneau,* for appellant.

*Duval L. Purkins,* for appellee.

MINOR W. MILLWEE, Justice. Henry Brown had been employed by appellant, Blankinship Logging Co., as a log cutter for about eight years on October 18, 1946, when he was killed in the wreck of a truck belonging to the company. Appellee, Bertha Mae Brown, is the widow of Henry Brown and filed a claim with the Workmen's Compensation Commission on behalf of herself and their six minor children. The logging company is owned and operated by G. R. Blankinship and will hereinafter be referred to as ''Blankinship.''

The claim was resisted by Blankinship and the insurance carrier and, after a hearing before Commissioner Riffel at Warren, Arkansas, appellee was awarded the maximum benefits under the compensation law on February 21, 1947. At the request of the employer and insurance carrier additional evidence was presented at a hearing before the full commission which resulted in the same award as made by Commissioner Riffel. On appeal to the circuit court the award was affirmed and appellee was allowed interest thereon at the rate of 6% from May 19, 1947, the date of the award by the full commission.

Appellant's principal contention for reversal of the judgment is that the death of Henry Brown did not arise ''out of and in the course of employment'' as required by our Workmen's Compensation Law (§ 2(f) of Act 319 of 1939). In determining whether there was substantial evidence to support the findings of the commission on this issue, we must view the facts in the light most favorable to support the award. *J. L. Williams & Sons, Inc.* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82; *Elm Springs Canning Co.* v. *Sullins*, 207 Ark. 257, 180 S. W. 2d 113.

We summarize the facts as follows: About two months prior to Brown's death Blankinship began a logging operation about 14 miles from Crossett, Arkansas, which is located about 60 miles south of Warren, Arkansas. Blankinship's place of business was located at Warren where most of the logging crew resided. Blankinship furnished a truck which was used in transporting

the crew to Crossett on Sunday evenings. The crew remained in Crossett during the work week and the truck was used in transporting the crew to and from the log woods. On Friday evening the crew returned to Warren in the same truck. Tyree Crane, a saw filer, drove the truck until about three weeks prior to the death of Henry Brown. Crane lived about 10 miles north of Warren and kept the truck at his home from Friday night until Sunday night each week.

When Tyree Crane signified his intention to quit work, Joe Woodward was employed in his place as saw filer. Woodward lived at Fordyce, Arkansas, about 30 miles northwest of Warren. After Tyree Crane terminated his employment, Henry Brown started driving the truck daily between Crossett and the log woods and on the week-end trips to Warren. At that time all members of the crew except Woodward and Mack Crane lived at Warren. On Friday night following Woodward's employment Brown drove the truck to Warren and employees living there were let out near their homes. Brown then proceeded to Fordyce where he delivered Woodward to his home and returned to Warren where the truck was kept over the week-end. On the following Sunday Brown drove to Fordyce for Woodward, and other members of the crew boarded the truck at Warren and the truck proceeded to Crossett. The same procedure was followed the following week except that Mack Crane was picked up near his home several miles north of Warren and on the highway between Warren and Fordyce.

On Friday, October 18, 1946, the crew arrived in Warren from Crossett about 9 p. m. with Henry Brown driving the truck. All of the crew except Woodward, Mack Crane and Tom Cook, Brown's neighbor, left the truck near their homes in Warren. Brown stopped at his home for a few minutes and then drove to Fordyce where Woodward was delivered to his home shortly before midnight. The truck was then driven back toward Warren until it reached New Edinburg where it turned east to the Crane community and Mack Crane was let out of the truck. Brown and Tom Cook proceeded

toward Warren and the truck became involved in a wreck resulting in the death of both men.

Joe Woodward testified that when G. R. Blankinship hired him he was told to report to James Henderson, the woods foreman. He boarded the truck at Warren on Sunday evening and talked to Henderson the next morning. Henderson agreed to furnish transportation to Woodward to and from his home at Fordyce. James Henderson denied making this agreement, but testified that he knew that Brown was using the truck in transporting Woodward to Fordyce and that he had not instructed him to do otherwise. Blankinship knew that Brown was driving the truck in the place of Tyree Crane, but denied any knowledge of the use of the truck for transportation of crew members beyond Warren. He also testified that it was the general practice to furnish transportation to the members of the logging crew; and that if he had known about the trips to Fordyce, he would have let the arrangement stand. None of the employees paid anything for transportation to and from work, and Blankinship paid fuel and other operating expenses of the truck while Brown was driving it.

There was some evidence that Brown and other crew members were drinking on the night Brown was killed, but appellants concede that the testimony is insufficient to defeat the claim for compensation on account of drunkenness.

Appellant relies on the general rule to the effect that injuries sustained by employees going to and returning from the regular place of employment are not deemed to arise out of and in the course of the employment. The authorities generally recognize several exceptions to the general rule. One of these exceptions, which is as well established as the rule itself, is stated by the Washington Court in the case of *Venho* v. *Ostrander Railway & Timber Co.*, 185 Wash. 138, 52 P. 2d 1267, 1268, as follows: ''When a workman is so injured, while being transported in a vehicle furnished by his employer as an incident of the employment, he is within 'the course of his employment,' as contemplated by the

act. In other words, when the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor.

"This exception to the rule may arise either as the result of custom or contract, express or implied. It may be implied from the nature and circumstances of the employment and the custom of the employer to furnish transportation." Many cases are cited by the Washington Court in support of this exception to the "coming and going" rule. Other cases are compiled in 145 A. L. R. 1033. See, also, "Current Trends in Workmen's Compensation" by Harovitz, pages 677-8.

Appellant relies on the case of *Liberty Mutual Ins. Co.* v. *Cardillo,* 154 Fed. 2d 529. That case arose under the District of Columbia's Workmen's Compensation Act. Employees living in the District of Columbia were working at Quantico, Virginia. The employer paid travel costs to and from the place of employment and allowed employees to select their own method of transportation. Several employees formed a car pool and alternated in the use of their cars. The Deputy Commissioner found that the death of an employee while driving his automobile homeward with other employees after terminating a day's work arose out of and in the course of employment even though the employee was not being paid wages at the time. This holding was reversed by the Circuit Court of Appeals for the District of Columbia in the case relied on by appellant. However, on review by the Supreme Court of the United States in *Cardillo* v. *Liberty Mut. Ins. Co.,* 330 U. S. 469, 67 S. Ct. 801, the circuit court of appeals was reversed and the decision of the Deputy Commissioner was sustained. In reversing the case the court said:

"There are no rigid legal principles to guide the Deputy Commissioner in determining whether the employer contracted to and did furnish transportation to and from work. 'No exact formula can be laid down

which will automatically solve every case.' *Cudahy Packing Co. of Nebraska* v. *Paramore*, 263 U. S. 418, 424, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532; *Voehl* v. *Indemnity Ins. Co.*, 288 U. S. at page 169, 53 S. Ct. at page 382, 77 L. Ed. 676, 87 A. L. R. 245. Each employment relationship must be perused to discover whether the employer, by express agreement or by a course of dealing, contracted to and did furnish this type of transportation. For that reason it was error for the Court of Appeals in this case to emphasize that the employer must have control over the acts and movements of the employee during the transportation before it can be said that an injury arose out of and in the course of employment. The presence or absence of control is certainly a factor to be considered. But it is not decisive. An employer may in fact furnish transportation for his employees without actually controlling them during the course of the journey or at the time and place where the injury occurs. *Ward* v. *Cardillo* (135 F. 2d 260, 77 U. S. App., D. C. 343). And in situations where the journey is in other respects incidental to the employment, the absence of control by the employer has not been held to preclude a finding that an injury arose out of and in the course of employment. See *Cudahy Packing Co. of Nebraska* v. *Parramore, supra; Voehl* v. *Indemnity Ins. Co., supra.*"

The case of *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579, involved facts somewhat similar to those in the instant case. There the timber contractor acquiesced in the custom of employees riding to and from the log woods on trucks of a subcontractor whose compensation insurance was paid by the contractor. An employee was injured while riding home from work on the subcontractor's truck. In affirming an award of compensation by the commission this court said: "In view of the fact that the evidence in this case established that transportation to and from his work was a prerequisite to the appellee's engaging in the timber cutting, and that there was an implied undertaking by the employer to furnish this transportation, as well as a tacit acquiescence on the part of the employer in the custom

of his workmen riding on his sub-contractor's truck when it was convenient to do so, we conclude that the circuit court did not err in sustaining the award made by the commission in favor of the appellee.''

We are of the opinion that there is substantial evidence to support the conclusion of the Commission that the death of Henry Brown arose out of and occurred in the course of his employment. The evidence viewed in the light most favorable to support the award is sufficient to establish an implied, if not an express, agreement of the employer to furnish transportation to the employee, Woodward, to and from Fordyce, Arkansas. If Woodward's testimony is credited there was an express contract of transportation to and from his home. It is undisputed that Brown was pursuing a well established custom of Blankinship in transporting the employees from the work site to their homes with the knowledge and acquiescence of the foreman of the logging crew, and the circuit court did not err in affirming the action of the Commission in so holding.

It is next insisted that the circuit court erred in allowing interest at 6% on the award from May 19, 1947, the date of the award by the full Commission. Appellants have not abstracted their motion for new trial, but, according to the abstract furnished by appellee, this alleged error was not assigned in appellants' motion for new trial in the circuit court and may not be raised for the first time here. *Tinsman Mfg. Co., Inc.* v. *Sparks*, 211 Ark. 554, 201 S. W. 2d 573.

On the date of the hearing of the appeal in the circuit court appellants filed a motion to remand the case to the Commission for further hearing on the ground of newly discovered evidence. The matter which appellants set out in their motion tends to impeach the witness Joe Woodward upon testimony which appellants should, by the exercise of reasonable diligence, have discovered and produced at one of the former hearings. This motion was overruled by the trial court and his action in so doing was not assigned as error in the motion for new trial. When the transcript was filed in this court on appeal,

appellants refiled the same motion here. Having failed to preserve the alleged error of the trial court in overruling their motion to remand in their motion for new trial filed in the circuit court, appellants have waived the right to urge it here. This omission may not be cured by refiling the same motion to remand in this court.

The judgment of the circuit court is correct and is, therefore, affirmed.