AMERICAN CASUALTY COMPANY *v.* JONES.

5-586                                    276 S. W. 2d 41

Opinion delivered March 7, 1955.

*Gannaway & Gannaway* and *Norton & Norton,* for appellant.

*Fletcher Long,* for appellee.

J. SEABORN HOLT, J.   Charles H. Jones, an employee of appellant, Tucker-Few Pontiac Co. (a partnership), while driving a car belonging to the company on Arkansas Street, Forrest City, Ark., at about 12:30 A.M., May 15, 1953, collided with a bulldozer parked on the north side of the street and received injuries from which he died shortly thereafter.

Appellee, his dependent widow, on behalf of herself and two dependent minor children, by proper procedure, filed claim before the Workmen's Compensation Commission (under §§ 81-1301—81-1349, Ark. Stats. 1947) and was granted an award of compensation. The action of the Commission was affirmed by the Circuit Court on appeal.

For reversal, appellants argue (1) that there is no substantial evidence that Jones' death arose out of and in the course of his employment, and (2) that his death was due solely to his own intoxication.

- 1 -

We have consistently held in cases of this nature that "1. The finding of the Commission have the same binding force and effect as the verdict of a jury, and, when supported by substantial evidence, will not be disturbed by the courts." 2. "The Commission had the right just as a jury would have had to believe or disbelieve the testimony of any witness. 3. The testimony will, on appeal, be given its strongest probative force in favor of the action of the Commission. 4. The burden is on the claimant to show that the injury was the result of an accident that not only arose in the course of the employment but that it also grew out of, or resulted from the employment." *Pearson* v. *Faulkner Radio Service Company*, 220 Ark. 368, 247 S. W. 2d 964, Headnotes 1, 2, 3 and 4.

Was there substantial evidence in the present case to support the Commission's finding and that of the Circuit Court on appeal? We hold that there was.

The following recitals from Summation of Facts by the Commission are, we think, supported by substantial evidence:

"The deceased, Charles H. Jones, Jr., was employed by this company as a new and used car salesman. He began working for the respondent company in September or October, 1949, and worked continuously until the time of his death. Deceased was paid $50.00 per week as an expense allowance and according to the employer, deceased's expenses were at least that much. Deceased was also allowed a commission of 2½ per cent on new cars he sold and 3 per cent on used cars. Deceased had been working under this arrangement for a year or more prior to the time of his death. It appears that deceased's average weekly earnings for the 52 weeks prior to his

death were $50.00. Deceased's hours of employment were indefinite. He usually came to work about 7:30 or 8:00 o'clock in the mornings and was in and out during the day. He frequently worked at nights of necessity because that was the only time he could see some of the prospective customers. The only requirements the employer had with regard to when deceased reported to work was that the employer wanted to see deceased the first thing in the morning each day. It was customary for the deceased to drive the car he was trying to sell to a prospective customer and the deceased had, on occasions, driven the company's cars to Brinkley, Cotton Plant and other towns in the vicinity of Forrest City. On some occasions deceased took a car out to show it to a prospective customer and then drove it on home and kept it overnight, this practice being done with the approval of the employer. The deceased had a personal automobile which he customarily drove from home to work and it appears that the gasoline he used in operating this car was paid for out of the $50.00 per week allowed him as expenses by the employer.

"The Tucker-Few Pontiac Company's place of business is located on U. S. Highway No. 70, about half a mile from the intersection of Broadway (Highway No. 70) and Washington (Highway No. 1) Streets in Forrest City. The deceased's residence is in the Beech Grove Addition, which is located in the northwest part of Forrest City.

"The respondent employer, like most other business concerns in Forrest City, closed his business each Thursday afternoon and such was the case on the afternoon of Thursday, May 14, 1953.

"The deceased went home for lunch about 12:30 or 1:00 o'clock on May 14th in a 1952 Chevrolet which was owned by the respondent employer. He then went down town and, by chance, met a neighbor, Mr. Floyd Barber, who had parked his automobile on Broadway, which is also U. S. Highway No. 70. After some conversation, Barber agreed to go to Brinkley with the deceased and

it appears that the purpose of the trip was for the deceased to try to sell one of the company's used cars. While in Brinkley, Jones agreed to sell a Mercury car to Mr. Lidke. He returned to Forrest City, procured the Mercury from his employer's lot and returned to Brinkley that same evening. Lidke agreed to take the Mercury provided a few minor corrections were made.

"The deceased and Barber then drove directly from Brinkley to Forrest City without stopping. According to Mr. Barber, the deceased went to sleep shortly after they left Brinkley and he woke deceased up after they had gotten back to where his car was parked on Broadway in Forrest City. Mr. Barber then got out of the Mercury and the deceased drove on east on Broadway. Mr. Barber went on home arriving there about 12:30 A.M. After Barber got out, the deceased drove on across Washington Street and to the next through street that runs north and south which is Forrest Street. It appears that the shortest way home would be for the deceased to turn north on Washington Street. In other words, he went two blocks beyond where he could have turned off. Just why the deceased did not turn north on Washington Street is not disclosed by the evidence and apparently no one will ever know. After turning north on Forrest Street, the deceased continued in a northerly direction on that street until he reached a point where Forrest Street makes a jog and is intersected by Arkansas Street. At that point he ran into a bulldozer which was parked on the north side of Arkansas Street. All of the windows in the car were up and the car was so jammed by the collision that it was necessary to get a steel bar to pry the door open before they could remove the deceased from the wreck. According to the evidence, the weather was bad that night and it had been raining for several days. The deceased was removed from the wreck to the hospital in Forrest City where he died about two hours later. It appears that the collision occurred about 12:25 A.M. on the morning of May 15, 1953.

"The evidence herein disclosed that over a period of about 10 hours prior to his death, deceased had about

4 or 5 cans of beer. There appears to be no evidence that deceased was intoxicated."

Mr. Few, deceased's employer, testified that Jones worked for the company day and night, that customers must be seen during their off duty hours. "Q. You say that there have been occasions when he would take a car out and show it and then rather than bring it back to Tucker-Few Motor Co., he would take it on home with him? A. Yes, sir. Q. And bring it back the next morning? A. Yes, sir. Q. Mr. Few, was that as much for your convenience as it was for his? A. Yes, sir. Q. Is that the reason you consented to it? A. Yes, sir, it expedited his movements . . . and gave him a little bit more working time. I didn't hold too close a rein on him at all . . . he worked in our interests, I thought without too close a supervision."

In *Blankinship Logging Company* v. *Brown*, 212 Ark. 871, 208 S. W. 2d 778, we said: " 'When a workman is so injured, while being transported in a vehicle furnished by his employer as an incident of the employment, he is within "the course of his employment," as contemplated by the act. In other words, when the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor.

" 'This exception to the rule may arise either as the result of custom or contract, express or implied. It may be implied from the nature and circumstances of the employment and the custom of the employer to furnish transportation.' "

As indicated, we hold that there was substantial evidence to support the conclusion of the Commission that the death of Chas. Jones, in the circumstances, arose out of and in the course of his employment.

- 2 -

Was Jones' death caused solely by his own intoxication? We hold that it was not. Our rule is well settled that in order for an employer to defeat liability for compensation because of intoxication (§ 81-1305, Ark. Stats. 1947), the employer must show not only that the employee was intoxicated but in addition that his death was "solely occasioned by intoxication." See *Elm Springs Canning Company* v. *Sullins*, 207 Ark. 257, 180 S. W. 2d 113, and the very recent case of *Cox Brothers Lumber Company* v. *Jones*, 220 Ark. 431, 248 S. W. 2d 91, reaffirming the Sullins case. The evidence here falls far short of showing that deceased came to his death solely by intoxication.

The Commission found that "there is no evidence whatsoever that deceased's accidental injury resulted solely from his intoxication. As a matter of fact, there is no substantial evidence that deceased was intoxicated. The record does disclose that over a period of about 10 hours prior to his accident, deceased possibly had 4 or 5 cans of beer."

We think there is sufficient substantial evidence to support this finding.

Accordingly, the judgment of the Circuit Court is affirmed.