MAVIS D. WILSON v. UNITED AUTO WORKERS INTERNATIONAL UNION, ET AL

5-4939                                   441 S.W. 2d 475

Opinion Delivered June 2, 1969

*McMath, Leatherman, Woods & Youngdahl* and *John P. Sizemore* for appellant.

*Smith, Williams, Friday & Bowen* by *George Pike, Jr.* for appellees.

JOHN A. FOGLEMAN, Justice. The widow of Harold Wilson, a staff representative of United Auto Workers International Union at the time of his death, asks us to reverse a judgment affirming the denial of death benefits by the Workmen's Compensation Commission. The commission found that Wilson's death on August 22,

1967, did not arise out of and during the course of his employment. As a point for reversal, appellant argues that the death of Wilson did so arise and that there is no substantial evidence to the contrary. As we understand the brief and argument on behalf of appellant, she contends that the evidence shows that Wilson's death arose out of and in the course of his employment as a matter of law. We do not agree.

The material testimony was as follows:

Wilson, a representative of United Automobile Workers, lived in North Little Rock. He worked under the supervision of the Little Rock office of the UAW, and his supervisor was Herbert Bingaman, Area Director. He had been going to Pocahontas off and on over a three-month period, during which he also spent some time in his business activities in Forrest City and Marianna. He went to Pocahontas on Monday, August 21, on the organizing mission that he had been conducting there. He was due to return to Little Rock on the following Saturday. He met a fellow organizer, Donald W. Slavens, at the Hillcrest Motel in Pocahontas where Wilson registered and obtained an air-conditioned room for the period of his stay there. Wilson was in charge of the campaign. He arrived at the motel about two o'clock and called on Slavens. The two discussed the program briefly and then went to the Shoe Workers' Hall to discuss plans. There they met with a committee around 2:00 p.m. and continued their discussion of plans until about 8:00 p.m. These parties separated for the evening meal, but later Wilson and Slavens met with two of the officers from the Shoe Workers' Lodge who were to help with the campaign. Wilson had his organizing material, files and papers in his room at the motel, along with the pamphlets and handbills and material normally used in this sort of campaign. The group was still engaged in this conference when Slavens asked to be excused about a quarter of eleven. Slavens and Wilson met between 7:30 and 8:00 a.m. on the following day and

had breakfast together, after which they picked up material at the motel and went to the Shoe Workers' Hall, each in his own automobile. There they prepared the hall for a meeting scheduled at 2:00 p.m. These preparations consisted of sweeping, moving tables and chairs, obtaining and icing soft drinks, and arranging for attendance prizes. They left the hall around 11:15, each going his separate way. Wilson advised Slavens that he made a practice of not eating lunch at noon. Slavens ate lunch and returned to the hall about 1:00 p.m. and awaited Wilson's arrival. Before the time scheduled for the meeting, Slavens was advised by an undertaker, who was also county coroner, that Wilson had suffered an accident. Slavens immediately went to the motel. He learned that Wilson had been found in the swimming pool at the motel clad in swimming trunks and had been taken to the funeral parlor. The coroner, the chief of police and a doctor examined Wilson's body in Slavens' presence. The only signs of injuries were bruises about Wilson's face and forehead. Slavens was advised that these were caused by attempted artificial respiration at the swimming pool.

Slavens stated that, as he recalled, the temperature was a moderate 82 or 85 and that the day was not a particularly humid one. The testimony indicates that Wilson was in good health. The only evidence of the cause of his death was the certificate made by the coroner who stated that Wilson apparently drowned accidentally while swimming in the pool at Hillcrest Motel. The cause of death is not seriously contested.

Wilson was paid an annual salary and a per diem when traveling. He was reimbursed for motel, telephone and other expenses. He was on call 24 hours per day, having no set hours of work. He was on his own initiative as to when he worked to accomplish his assignment. He had full authority to interrupt his work day for personal reasons but remained on call even during these interruptions. It was normal for those holding

positions as staff representatives to work out of the hotel or motel where they were staying during these campaigns. According to his supervisor, even though Wilson would be subject to call during self-designated periods of rest, relaxation or exercise, he was not required to leave word where he could be reached during these periods or to account to anyone for his time or whereabouts. He was expected to leave word at the home office as to where he could be reached. Wilson had advised this office that he would be at the Hillcrest Motel during his stay in Pocahontas.

UAW policy encouraged their employees to exercise and remain physically fit. They required annual physical examinations of these employees. They provided a $25 per year allowance for their representatives to enroll in YMCA programs. There is no evidence that Wilson ever took advantage of this allowance. Wilson had told his supervisor that swimming was one of his forms of relaxation and exercise. Other than this he had no knowledge of Wilson's practice of swimming at motels although he knew that Wilson spent a lot of time at motels. Bingaman stated that the Hillcrest Motel was the headquarters of both Wilson and Slavens during this campaign. Bingaman also testified that he had no objection to the usual practice of a staff member swimming in a motel pool when in operation, if the member enjoyed that type of recreation. The physical fitness program was voluntary, and some took advantage of it and some did not.

Appellant testified that she and her husband swam a lot when they stayed in a motel. She said he was never at home long enough to swim either in the pool or lake in the subdivision in which they lived. There was no reason for anyone to have called Wilson between 11:00 a.m. and 2:00 p.m. on the date of his death, although there was no reason to say with assurance that no one would call him. It was stipulated that Wilson was in the swimming pool alone and that no lifeguard was provided at the pool.

We find that there was a question of fact as to whether the death of Wilson arose out of and in the course of his employment and find substantial evidence to support the commission's finding that it did not. In its findings the commission stated:

"The Commission concludes from all of the evidence that deceased's death did not arise out of and during the course of his employment. The Commission is unable to say what caused deceased's death. There is a lack of evidence to establish a causal connection between deceased going swimming, if he did, and his employment. Deceased's employment did not require him to go to the swimming pool and there is no evidence that he was performing any service for his employer by taking off from his work activities in the middle of the day to go sun bathing or swimming. He was engaged in an activity of his own choosing and it was not one that bore a causal connection with his employment."

In considering this case, it is necessary that we keep in mind basic fundamentals concerning review of workmen's compensation cases. The burden was on the claimant to show that the injury arose in the course of the employment and grew out of or resulted from the employment. *American Casualty Co.* v. *Jones*, 224 Ark. 731, 276 S.W. 2d 41. The findings of the Workmen's Compensation Commission have the same binding force, effect and verity as the verdict of a jury and are treated in this court in the same manner as a jury verdict. *Kelley* v. *Southern Pulpwood Co.*, 239 Ark. 1074, 396 S.W. 2d 305; *American Casualty Company* v. *Jones*, 224 Ark. 731, 276 S.W. 2d 41. In doing so, we must accept that view of the facts which is the most favorable to the commission's findings. *Albert Pike Hotel* v. *Trapner*, 240 Ark. 958, 403 S.W. 2d 73; *Burrow Construction Co.* v. *Langley*, 238 Ark. 992, 386 S.W. 2d 484; *Elm Springs Canning Co.* v. *Sullins*, 207 Ark. 257, 180 S.W. 2d 113. We must also keep in mind that the commission must determine

the extent to which credit is given to testimony, even when it is undisputed. *Parrish Esso Service Center* v. *Adams,* 237 Ark. 560, 374 S.W. 2d 468; *American Casualty Co.* v. *Jones,* 224 Ark. 731, 276 S.W. 2d 41; *Meyer* v. *Seismograph Service Corporation,* 209 Ark. 168, 189 S.W. 2d 794. When we consider the findings of the commission in the same manner as we would a jury verdict on the question involved here, we must sustain the commission's findings.

Even though there is no conflict in direct evidence as to facts material to a determination whether an employee met death while in the course of his employment, the Workmen's Compensation Commission has a right to consider all circumstances and proven facts and to draw all reasonable inferences deducible therefrom. *United Steel Workers* v. *Walden,* 228 Ark. 1024, 311 S.W. 2d 787. The questions posed in this case are the same that confronted the court in *Woodmansee* v. *Frank Lyon Co.,* 223 Ark. 222, 265 S.W. 2d 521. They are: "Do the facts and circumstances of this case show, as a matter of law, that appellant's injury arose out of and in the course of his employment? Or, to the same effect, the question may be more specifically stated: Do the facts and circumstances shown by the record reveal a lack of substantial evidence to support the commission's finding that appellant's injury did not arise out of and in the course of his employment?" There we answered both questions in the negative, as we do here. In the opinion in that case it was carefully pointed out that the commission, in applying undisputed facts to the governing rules, must use some degree of discretion and judgment in this kind of a case. We quoted with approval from *Miller* v. *Keystone Appliances,* 133 Pa. Super. 354, 2 A. 2d 508. That court said:

" 'Whether deceased was in the course of his employment when he was injured is a question of law. * * * But in determining that question we must bear in mind the liberal construction that this

term has received in the courts, and the exclusive function of the compensation authorities to find facts, whether from direct or circumstantial evidence, and the inferences therefrom.' "

This case bears a great similarity to the *Woodmansee* case in that here, as there, portions of the testimony could be interpreted as indicating compensability while other portions, and in some instances the same testimony, can be interpreted as indicating noncompensability.

The rules governing activities commonly referred to as recreational are most succinctly stated in Larson's text on Workmen's Compensation Laws, Vol. 1, § 22, page 349, an authority frequently cited and relied upon by this court. The rule is stated thus:

"Recreational or social activities are within the course of employment when

(1) They occur on the premises during a lunch or recreational period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

Each of the three alternative tests stated by Professor Larson is quoted in the opinion in the *Woodmansee* case, with approval, where guideposts for determining compensability of a claim such as this were established. In view of the fact that the evidence would not justify any inference that the employer in this case would derive any

benefit from Wilson's swimming activities other than morale and efficiency benefits, we find that the third test was not met. In this respect, the comments of Professor Larson in Vol. 1, § 22.30, page 375, are pertinent:

> "'Controversy is encountered also when the benefit asserted is the intangible value of increased worker efficiency and morale. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not. In this respect, the argument is reminiscent of the same view sometimes heard in connection with the personal comfort cases: eating, resting, and the like do indeed improve the efficiency of the employee, but this is equally true (and even more true) of the sleeping and eating which he does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the "benefit" establishes work-connection, the recreation cases must submit to some similar limitation, since otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities. *It can be taken as the distinctly majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment.*'" (Emphasis added.)

Certainly it cannot be said that the commission was unjustified in drawing the inference that the UAW received no other benefit from the activity in which Wilson was engaged at the time of his death.

It could not be said that the employer expressly or impliedly required Wilson's swimming. There was nothing to indicate that Wilson, at this time, was engaged in any activity whatever on behalf of his employer. Even though he was expected to entertain and solic-

it employees of the company whom he was attempting to organize for his employer, there is no evidence whatever that he saw any of these on the day of his death, much less during the time that he was in and around the motel after leaving the union hall. Clearly, the evidence did not make Wilson's swimming a part of his services. Thus the second test was not met.

Appellant's strongest arguments for compensability must be tested by the first alternative stated by Professor Larson. She contends: that the entire premises of the Hillcrest Motel were the employer's premises under the circumstances here; that, since Wilson was subject to call at any time and place, the swimming pool constituted a part of those premises, as long as he was in Pocahontas on the mission assigned to him; that his swimming was in compliance with company policy encouraging physical fitness; that Wilson's death occurred around noon after he had done work in preparation for an afternoon meeting but before the meeting took place; that his recreational activity was accepted and normal.

While it might have been reasonable for the commission to draw the inference from these circumstances that Wilson's death occurred on company premises during a lunch or recreational period and that his swimming was a regular incident of the employment, we cannot say that it was not reasonable or proper for the Workmen's Compensation Commission to draw the opposite inferences, as it did. As we see it, the fact finder made a permissible finding on a close question of fact by resolving the inferences adversely to the claimant's contentions. What we said in *Herman Wilson Lumber Co. v. Hughes*, 245 Ark. 168, 431 S.W. 2d 487, is appropriate here:

"Perhaps the trial court fell into error by reason of its conclusion that statutory law requires that testimony must always be given a liberal construction in favor of the claimant. It is true that it is

the duty of the Workmen's Compensation Commission to draw every legitimate inference possible in favor of a claimant and to give him the benefit of the doubt in factual situations. (Citations omitted.) But it is not the province or duty of either the circuit court or this court to make a de novo application of this rule on review. Both courts are required to view the evidence in the light most favorable to the findings of the Commission and to give the testimony its strongest probative force in favor of the action of the full commission. (Citations omitted.) The question is not whether the testimony would have supported a finding contrary to the one made, but whether it supports the finding which was made."

Appellant cites and relies upon numerous cases from other jurisdictions, (the vast majority of which sustained commission findings of compensability) some of which might have persuasive value were it not for the fact that the Arkansas guideposts for compensability had been so definitely established in the *Woodmansee* case. None of the Arkansas cases relied upon by appellant have to do with activities that might be called recreational. Some of those cases have to do with activities of an employee which were not involved in precisely what he was hired to do by his employer. Many of them are cases in which a finding by the Workmen's Compensation Commission that the death arose out of and in the course of employment was affirmed. See *Arkansas Power and Light Co.* v. *Cox*, 229 Ark. 20, 313 S.W. 2d 91; *Williams* v. *Gifford-Hill and Co.*, 227 Ark. 340, 298 S.W. 2d 323; *American Casualty Co.* v. *Jones*, 224 Ark. 731, 276 S.W. 2d 41; *Blankinship Logging Co.* v. *Brown*, 212 Ark. 871, 208 S.W. 2d 778, *Lundell* v. *Walker*, 204 Ark. 871, 165 S.W. 2d 600.

Other cases have to do with acts of personal ministration, which are universally recognized as incidents of the employment and as such protected as injuries on

the actual employment, so long as they are only slight deviations, and are done with the consent or acquiescence of the employer. *Tinsman Mfg. Co.* v. *Sparks,* 211 Ark. 554, 201 S.W. 2d 573; *Williams* v. *Gifford-Hill and Co.,* supra. Others recognize exceptions to the "going and coming rule," where the employer furnishes the method of transportation, or when the employee is injured at a place so close to the employer's premises as to be considered a part thereof, or when the employee has a duty to perform for the employer while en route home or under the traveling salesman rule, where the travels of the salesman are within the course of his employment from the time he leaves home until he returns, for the reason that the traveling itself is a large part of the job. *Hunter* v. *Summerville,* 205 Ark. 463, 169 S.W. 2d 579; *Tinsman Mfg. Co.* v. *Sparks,* supra; *Bales* v. *Service Club,* 208 Ark. 692, 187 S.W. 2d 321; *Owens* v. *Southeast Arkansas Transportation Co.,* 216 Ark. 950, 228 S.W. 2d 646; *Frank Lyon Co.* v. *Oates,* 225 Ark. 682, 284 S.W. 2d 637.

The decision in the case of *Fine Nest Trailer Colony* v. *Reep,* 235 Ark. 411, 360 S.W. 2d 189, is also distinguishable. There the salesman's death did not occur during any period of recreational activities, but from activities of the salesman in preparation of a meal in a house trailer he had endeavored successfully to sell to a prospective customer who accompanied him to the house trailer which was located on a tract of land occupied by the salesman. The negotiations were over an extended period, and the steak which the salesman was preparing to eat had been purchased while he and the customer were en route to the trailer. The sale was concluded about 8:30 p.m., and the salesman's invitation to the customer to stay and eat with him had been declined. It was pointed out in that opinion that it was necessary that the salesman bring the house trailer to his employer's place of business the next morning in order to complete the sale and that he was driving a company truck equipped to tow house trailers. In that case the court clearly stated that if a reasonable inference had been deducible from the

evidence that the salesman's death did not grow out of and in the course of his employment, the decision of the commission denying compensation must have been affirmed. The court found that the *only* reasonable inference to be drawn was that the death, under the circumstances, grew out of and in the course of the employment. We do not consider that to be the case here.

The judgment of the circuit court is affirmed.

GEORGE ROSE SMITH, JONES, and HOLT, JJ., dissent.

J. FRED JONES, Justice. I do not agree with the majority opinion in this case. The known facts are not in controversy. There is no serious contention that Mr. Wilson's death was not the result of an accident within the meaning of the Workmen's Compensation Act, and there is no question, in my opinion, that it occurred within the course of his employment. Had Mr. Wilson died as a result of slipping in the shower at the motel or by being struck by an automobile while crossing the street to a cafe for lunch, the compensation coverage under the other facts in this case, including the nature of the duties of his employment, would not be questioned.

The commission seems to have found that the accident did not grow out of, or occur within, the course of the employment because Mr. Wilson had stepped out of, or deviated from, the course of his employment and was engaged in recreational activity for his own personal pleasure and benefit when his death occurred. The majority finds substantial evidence to support this finding, but I do not.

I do not consider this a recreational injury case at all under the facts in the record. Mr. Wilson did not go to the municipal swimming pool for an hour or so of recreation and to get away from it all, neither was he on an outing in quest of recreation. The record does not reveal how late Mr. Wilson worked on the night before his death, but Mr. Wilson's associate had gone to bed

tired and worn out at "a quarter till eleven" the night before and left Mr. Wilson still working. Mr. Wilson was up before 7:30 on the day of his death and had worked that morning at a Union Hall preparing it for a 3:00 p.m. meeting. Rather than take time out for lunch on the day of his death, instead of stepping outside the course of his employment for recreational purposes, Mr. Wilson stepped outside his motel room for a dip in the motel pool before going to the afternoon meeting. What was Mr. Wilson's state of mind in selecting the pool rather than the shower, if one was available, is not in the record, but I do not consider the difference of any importance. Whether Mr. Wilson felt that he was too strained and tense to face the organizational work in the afternoon and was attempting to relax before attending the scheduled meeting will probably never be known. But in my opinion a motel room door between the shower and the motel pool is too narrow a dividing line between course of employment and recreation for personal pleasure, and certainly I am of the opinion that the claimant widow was entitled to the benefit of any doubt.

It is much more logical to me, under the facts of this case, that Mr. Wilson was attempting to freshen up and relax in preparation for his afternoon meeting rather than foregoing his lunch for a swim in a motel pool for exercise and personal pleasure. It seems to me that to conclude otherwise would require an assumption that Mr. Wilson preferred the pleasure of swimming to the necessity of eating.

It is my opinion that Mr. Wilson was within the course of his employment when he returned to his motel room following his work at the Union Hall in preparation for the afternoon meeting, and it is my further opinion that he did not abandon, or deviate from the course of his employment, when he stepped across the threshold of his motel room and entered the swimming pool which the motel had provided for the use of its guests.

1172

I would reverse.

I am authorized to state that GEORGE ROSE SMITH and HOLT, JJ., join in this dissent.