PEARSON *v.* FAULKNER RADIO SERVICE COMPANY.

4-9753                                                   247 S. W. 2d 964

Opinion delivered April 14, 1952.

*Surrey E. Gilliam, Melvin E. Mayfield* and *Stein & Stein,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellees.

HOLT, J. This is an action against Faulkner Radio Service Company and its insurance carrier under our Workmen's Compensation Law (Initiated Act No. 4 of 1948, effective date December 3, 1948) Sections 81-1301—81-1349, Ark. Stats., 1947.

Appellant suffered an injury June 2, 1949, and by proper procedure sought an award of compensation. The full Commission denied compensation on the ground that his injury did not arise out of and in the course of his employment, and its action, on appeal to the Union Circuit Court, was affirmed. This appeal followed.

The question presented is the sufficiency of the evidence to support the Commission's finding and that of the Circuit Court on appeal.

We have consistently held in a long line of cases that " 'The rule has been clearly established that the finding of the Commission shall have the same binding force and effect as the verdict of a jury, or of a circuit court sitting as a jury, and when supported by substantial evidence, such findings will not be disturbed by the circuit court on appeal to that court or on appeal to this court.' * * * The Commission had the right, just as a jury would have had, to believe or disbelieve the testimony of any witness." See, also, *Harris Motor Company* v. *Pitts,* 212 Ark. 145, 205 S. W. 2d 21, and *Mechanics Lumber Co.* v. *Roark,* 216 Ark. 242, 224 S. W. 2d 806.

"* * * we give to the testimony its strongest probative force in favor of the action of the full Commission." *Springdale Monument Company* v. *Allen,* 216 Ark. 426, 226 S. W. 2d 42.

The burden of proof is on the claimant to show that injury or death of the employee was the result of an accidental injury that not only arose in the course of the employment, but in addition, that it grew out of, or resulted from, the employment.

The Commission made the following findings and conclusions, which we hold are supported by substantial evidence: "That the accidental injury the claimant sustained June 2, 1949, did not arise out of and occur in the course of his employment with the Faulkner Radio Service Company.

"Upon the foregoing finding of fact, the Commission reaches the following, CONCLUSIONS OF LAW. The issue in this case is whether the claimant's accidental injury sustained June 2, 1949, arose out of and in the course of his employment.

"The claimant was employed by the Faulkner Radio Service Company as a radio technician and service man and occasionally assisted in sales work. Beginning about March 15, 1949, the claimant was off the payroll and under the doctors' care because of his nervous condition. Some time after April 1, 1949, and while the claimant was off work, the family decided to have a radio shop in Camden or Magnolia and it was thought that if the claimant could be away from El Dorado he might be in less of a strain because of difficulty with his wife. Although not on the payroll, and not considered as working or being on the job, the claimant during April and May investigated possible locations for a radio shop. The claimant finally decided upon one in Magnolia and negotiations were conducted and terms agreed upon to get the necessary money. Mrs. Faulkner, claimant's mother, obtained a loan and a mortgage was given upon the residential property of Mr. and Mrs. Faulkner. The claimant came to the employer's place of business in El Dorado on June 1, 1949. Upon the evidence presented, we are

of the opinion the claimant did not report back to work for the purpose of resuming his employment with the respondent but because he thought the loan would be available that day so he could purchase the radio shop for himself at Magnolia. Apparently the claimant did do a little work around the shop, but he had also done the same thing between April, 1949, and June 1, 1949, when he was not working and was not being paid; also, it is clear from the evidence that the claimant spent the greater part of June 1 and 2, 1949, in doing things of a personal nature which had no connection with his work. As Mr. Faulkner expressed it, the claimant was at his shop on June 1 and June 2 just marking time until he was to go to Magnolia.

"The claimant stated in his testimony that he wanted to get the deal closed while Mr. Kelly was in the mood and that is why he returned to the shop on June 1, 1949, instead of later, as recommended by the doctors.

"The testimony also reflects that the shop in Magnolia was to be bought by the claimant and it was to be in his name as the owner and he held himself out as being the sole interested party. It appears from the testimony that on June 1, 1949, that it was to be a loan to the claimant by his parents and that the shop was to be his in name and in fact. It is alleged that the Magnolia shop was to belong to the Faulkners inasmuch as the claimant's wife refused to sign certain papers on June 1, 1949, although the shop was to be in the name of the claimant. However, the shop in Magnolia was not purchased and the transaction was not consummated.

"According to the evidence, nowhere in the books and records of the respondent employer is there any reference to the loan the Faulkners obtained for the claimant. Company property was not involved and different banks were used. No where is there anything which ties this undertaking into the operation of the Faulkner Radio Service Company. There is no claim made that the claimant was employed during April and May and he drew no salary or wage, yet during April and May he made numerous trips and spent considerable time

in connection with the location of the Magnolia shop. We think there is no distinction between the April and May trips and the June 2nd trip and that they were all part of the same undertaking. The fact that the claimant might have done some small amount of work around the shop of the Faulkner Radio Service Company while marking time is of no significance. He could not have spent very much time around the shop on June 1 and 2, 1949, considering the amount of time that he was out on personal business or pleasure.

"After carefully considering all of the evidence in this case, we are of the opinion that the claimant's accidental injury on the afternoon of June 2, 1949, did not arise out of and during the course of his employment with the Faulkner Radio Service Company. Claimant's claim must, therefore, be denied and dismissed."

Appellant argues that he was in the employ of appellee June 1, 1949, as a radio technician or service man, that the Faulkners decided to go into the radio repair business in Magnolia and agreed to purchase the Kelly Radio Shop in that city for the Faulkners and sent him (Pearson) to that city to negotiate the purchase. The evidence shows that appellant, Pearson, was injured on the trip as a result of his automobile failing to negotiate a curve, turning over several times, was demolished, and throwing him about seventy-five feet from the wrecked car. Scattered about were clothes, beer bottles, a gun and between four and five thousand dollars in cash.

Mr. Karl Kelly testified, in narrating a conversation with Mr. Faulkner: "* * * I walked up and said, 'Mr. Faulkner did you know about the deal between James and me?' and he said, 'Yes, I did.' I said, 'I just wondered if it was James buying it or you.' Some of the boys over here had been telling me Mr. Faulkner wanted a place in Magnolia, and he said, 'No, it was James. He was buying it himself.' He said he had some trouble with him or a fuss with him and said, 'He left my place. I didn't run him off. He quit and left on his own accord.' Q. Do you recall anything else he said about the deal or about James? A. He said, 'He is a good radio man.' He

says, 'He is a good man.' I believe he said, 'I should have made him go back to work but I didn't. I just let him go and we have been doing without him.' ''

Title to the Magnolia Radio Service Company, it was conceded, was to be taken in Pearson's name.

After the accident, Mrs. Faulkner asked Mr. Kelly to hold his shop (Kelly Radio Shop) for appellant.

Much of the testimony was in conflict. However, it is for the Commission to speak the final word in controversial facts as in jury cases. The evidence was substantial and sufficient to support the Commission's action and the judgment of the Union Circuit Court.

Affirmed.