GRIMSLEY, ADMINISTRATRIX *v.* MANUFACTURERS FURNITURE COMPANY.

5-625                                                    276 S. W. 2d 64

Opinion delivered March 14, 1955.

*Alonzo D. Camp,* for appellant.

*Goodwin & Riffel,* for appellee.

J. SEABORN HOLT, J. R. L. Grimsley, by proper procedure under our Workmen's Compensation Law (§§ 81-

1301—81-1341, Ark. Stats. 1947), sought an award of compensation. His claim was first heard before a single Commissioner and denied, and was again denied by unanimous action of the full Commission February 1, 1954. The order denying the compensation was, on appeal, affirmed by the Circuit Court October 28, 1954. Since these hearings, Mr. Grimsley died and his widow, as administratrix, prosecutes this appeal. He first alleged in his claim (filed September, 1952) that on June 23, 1952, he was overcome by sulphur dioxide gas while repairing refrigerators for his employer, lost consciousness, fell to the floor, striking his head, and as a result lost his sight. Later, he amended his claim alleging that his blindness was the result of exposure to methyl alcohol fumes to which he had been exposed in the repair room over a period of several years, all in the course of his employment with appellee, Manufacturers Furniture Company.

For reversal, appellant relies on these two points:

"1. The Commission found as a fact that Claimant's exposures to methyl alcohol fumes were too infrequent, were of too short duration when exposed, and were too mild so as to cause injury to his vision. It is appellant's contention that there was no substantial and competent evidence to support the Commission's findings.

"2. The Commission found that the medical testimony in the case was sufficient to support its decision to the effect Claimant's injury did not arise out of and in the course of his employment with respondent. It is appellant's contention that there was no substantial testimony—no competent testimony to support the decision of the Commission in that the medical doctors who testified for respondent were not specialists in the field of ophthalmology."

— 1 and 2 —

Mr. Grimsley was employed by appellee (Manufacturers Furniture Co.) about seven years ago as manager

of its used furniture annex. His duties required him to appraise, buy and sell used furniture and to supervise the operation of the annex in repairing furniture and refrigerators. He worked both inside and outside. Two Negro workmen, under his supervision, repaired the furniture, using in the process lacquer, thinner and wood alcohol in spray guns. Wood alcohol is a paint thinner. Grimsley did repair work in the repair room (20 x 40 feet inside) on refrigerators and sometimes he did this repair work at night. In this repair room a door three feet wide by seven feet tall opened on the south and another on the north. A smaller door opened from this repair room into the showroom. Grimsley in the course of time developed what is called retrobular neuritis, damage to each optic nerve behind the eyeballs. There is some dispute as to whether Grimsley did any repair work on furniture that required the use of the methyl alcohol in this repair room. The two Negro employees, as indicated, used methyl alcohol regularly. Six gallons had been purchased by appellee (furniture company) for use in refinishing, in the two-year period preceding the filing of the claim and about two gallons remained unused at the time Grimsley was discharged by appellee (furniture company). Grimsley became an alcoholic. In fact, there is evidence that his discharge August 29, 1952, resulted from his excessive drinking and drunkenness. There is also evidence of sufficient ventilation through the doors of this repair room against the methyl alcohol fumes and that any exposure of Mr. Grimsley to these fumes was too infrequent and of too short duration and intensity to have caused his blindness.

Mr. Grimsley voluntarily told Dr. Greutter that his (Grimsley's) exposures to fumes were ''irregular,'' that ''he would go into a room for a brief time to inspect the work and then leave and he inferred to me his exposure was not prolonged for any particular period.''

The two Negro employees testified that Mr. Grimsley worked most of the time on sales and not on repairing furniture and that wood alcohol was not used daily.

Mr. Herbert Rule testified that only a negligible amount of Mr. Grimsley's time was spent in the repair room.

There was conflicting medical testimony on behalf of appellee (furniture company). Dr. J. E. Greutter testified to the effect that in his opinion Mr. Grimsley's blindness was due to hypertension,—hypertensive vascular disease or arteriosclerosis, and not to methyl alcohol poisoning. Dr. Robert Watson and Dr. E. L. Wilbur tended to corroborate Dr. Greutter's testimony. Dr. Wilbur testified: "Now, with the type of findings you have here of the pathology of the eye, plus the pathology of the central nervous system, and of the vascular system, medically speaking, what would be the best diagnosis that could be made in this case as to the cause of Mr. Grimsley's troubles? A. Arteriosclerosis. Q. Could arteriosclerosis be caused by exposure to methyl alcohol? A. I never heard of it."

While, as indicated, medical testimony given by two doctors, Dr. J. L. Smith and Dr. Paul Ewing, tended to contradict that of the three doctors above, we have consistently held that in situations, as this, such conflicting testimony presents a fact question to be determined by the Commission and we are without authority to reverse its conclusions when supported by substantial testimony, *John Bishop Construction Company* v. *Orlicek, ante* page 182, 272 S. W. 2d 820.

After reviewing all of the testimony, we conclude that there was substantial evidence that Grimsley's blindness did not grow out of his employment, as the Commission found. In short, there was substantial evidence that his blindness was not due to exposure to methyl alcohol fumes, was not due to his being overcome with sulphur dioxide gas and his fall, as alleged in his first claim filed. It therefore becomes our duty not to disturb the Commission's actions in denying an award.

"Findings of fact by the Workmen's Compensation Commission are given the same verity as attach to the verdict of a jury and this applies on appeal to the Cir-

cuit Court as well as to the Supreme Court from the judgment of the Circuit Court. *Stroud* v. *Gurdon Lumber Company,* 206 Ark. 490, 177 S. W. 2d 181.

"On appeal, the Supreme Court must view testimony in its strongest light in favor of the Commission's findings. *Hughes* v. *Tapley, Administratrix,* 206 Ark. 739, 177 S. W. 2d 429; *Pearson* v. *Faulkner Radio Service Company,* 220 Ark. 368, 247 S. W. 2d 964.

"Where the Commission acting upon sufficient evidence sustains or rejects an award, such findings will not be disturbed on appeal." *John Bishop Construction Company* v. *Orlicek* above.

The judgment of the Circuit Court is affirmed.

Justices MILLWEE and ROBINSON dissent.

Justice WARD not participating.