Joe GORDON *v.* J. A. HADLEY CONSTRUCTION Co. and MARYLAND CASUALTY Co.

74-15                                    509 S.W. 2d 287

Opinion delivered May 20, 1974

*David Solomon,* for appellant.

*Roscopf & Epes, P.A.,* for appellee.

LYLE BROWN, Justice. The circuit court affirmed a unanimous opinion of the Workmen's Compensation Commission that claimant-appellant failed to show by a preponderance of the evidence that the cause of a leg amputation was work-connected. Claimant contends there is no substantial evidence to support the finding.

Claimant was 53 years of age at the time of his alleged mishap on the job in June of 1972. For several years claimant had been a heavy equipment operator for Hadley Construction Company. He was driving a form lift machine. A driver and an operator sit some twelve feet off the ground in performing their duties. The machine straddles and moves forms used to make concrete mats, which in turn are used by the Corps of Engineers for revetment of river banks. Claimant had reported to his employer that the clutch was not working properly and was jerking and was hard to engage and disengage. He complained that the working of the clutch was causing pain in his left leg. Then on an uncertain day in June, a tank on the machine exploded. There was evidence that as a result of the explosion claimant jumped from the machine. He said he landed on his left foot on top of a concrete slab. The incident occurred about quitting time. Claimant testified that the next morning there was considerable swelling around the foot and ankle. With the aid of crutches claimant went to the jobsite and requested he be sent to the doctor.

Claimant was sent to Dr. C. P. McCarty, a general practitioner in Helena. Dr. McCarty saw claimant on June 29, 1972. He said claimant was complaining of pain in his left calf; that claimant explained to him that a bad clutch on his machine was constantly jerking and he thought that caused the pain. The doctor prescribed heat, rest and muscle relaxants. Claimant was seen on July 3 and there was discoloration from the mid-calf down. "It was obvious that there was some vascular impairment, and we tried to improve the circulation of the leg."

When claimant was next seen on July 17 his left leg was cold, discolored, and numb from the mid-calf down. "The lower leg was not getting blood and that portion was beginning to die. It was early gangrene. * * * This is caused by a blockage of the arterial supply, so that blood can't get to the tissues, and it is known as arteriosclerosis. This disease is where cholesterol deposits are deposited into the elastic part of the blood vessel, causing a hardening of the artery and a gradual narrowing to where blood can't get through. Plaques are formed, and when they break off the clot forms around them, so that there is impediment to the blood flowing through the blood vessels. In my opinion this condition could be aggravated by the type of work that Joe Gordon was doing, such as shifting the clutch, pushing it in and operating the machinery. It would not cause arteriosclerosis, which is a disease process, but the severe trauma that he explained to me could have broken off these clots and caused an obstruction of his blood vessel. I found no evidence or outward signs of trauma and there was no break in the skin or any lacerations."

On cross-examination the doctor said he did not contribute any of the condition he saw to claimant jumping from the machine. He said in his opinion, based on the history of the clutch constantly jerking, the agitation produced trauma which precipitated the clot. He conceded that he made no physical finding of trauma. He also said the clot could have occurred while claimant was in bed; also, that "his other leg is affected by this disease, but it has not occluded".

Dr. McCarty referred claimant to the vascular surgeons at John Gaston Hospital, Memphis. Dr. Sharpton of that hospital, one of the surgical residents, testified. He said he received a history of pain in the left leg being caused by the constant manipulation of a defective clutch. He said there was no mention of any acute type of trauma. Examination revealed a complete blockage of the left femoral artery and marked arteriosclerosis of the vessels in the lower part of the left leg. He said the point of origin of the blockage was located in the upper one-third of the thigh. An operation was performed which consisted of using a vein to by-pass and shunt the blood around the blocked area. That operation was not successful because the by-pass vein became clotted. It was then decided by the surgical staff that amputation was the only solution. Dr. Sharpton performed the amputation.

Dr. Sharpton testified that claimant had marked atherosclerosis and arteriosclerosis and that in such a situation blockage is "almost invariably due to a narrowing of the arteries and the condition being set up with usually a plaque of this hardening vessel breaking off and forming a complete blockage, and the subsequent blood clotting forming at the point creating a total blocked artery. * * * My findings and history are consistent with the development of this blood clot during the normal course of these diseases". The doctor reiterated that the blood clot which caused the trouble was in the thigh area and that there was no clot in the area of the calf or ankle of the leg. He said if trauma made any contribution it would have to occur in the area of the trauma itself. Furthermore, he said that if a man with claimant's diseases suffered an acute trauma that precipitated a blood clot, the clot would show up within a few days.

A conflict in the medical testimony is at once apparent. That conflict presents a fact question to be resolved by the commission. We cannot reverse when the medical findings which support the commission are substantial. *John Bishop Construction Co.* v. *Orlicek*, 224 Ark. 182, 272 S.W. 2d 820 (1954); *Grimsley* v. *Manufacturers Furniture Co.*, 224 Ark. 769, 276 S.W. 2d 64 (1955); *McKamie* v. *Kern-Trimble Drilling Co.*, 229 Ark. 86, 313 S.W. 2d 378 (1958). The commission evidently adopted the view of Dr. Sharpton and we cannot say that evidence was insubstantial.

Affirmed.