## MASSEY FERGUSON, INC. and SENTRY INSURANCE COMPANY *v.* R. T. FLENOY

CA 80-191                    603 S.W. 2d 463
Court of Appeals of Arkansas
Opinion delivered September 3, 1980

*Penix, Penix & Mixon*, for appellants.

*Daggett, Daggett & Van Dover*, by: *Jesse B. Daggett*, for appellee.

GEORGE HOWARD, JR., Judge. The issue tendered for resolution is whether the holding of the Workers' Compensation Commission that claimant's stroke was precipitated by a

compensable back injury is supported by substantial evidence.

Claimant, 54 year old male, who has a third grade education, sustained a back injury in the course of his employment and his physician fixed his disability, to the body as a whole as a consequence of this injury, at 15% which is not challenged by appellants.

While hospitalized, claimant was scheduled to undergo a myelogram test. Approximately two hours prior to the scheduled test, claimant suffered a stroke which rendered him totally disabled.

The Worlers' Compensation Commission found:

"The fact that the stroke occurred only two hours prior to the scheduled procedure while claimant was emotional, under severe stress and apprehension, creates a strong inference that a causal relationship exists between the hospitalization caused by the injury and the stroke."

The Commission held that compensation "shall be paid for continued total disability as distinguished from 'permanent total disability' since there is not sufficient proof of permanency of claimant's condition."

Appellants argue that the claimant has the burden of establishing a causal connection between his stroke and his employment; that the medical evidence contained in this record falls short of the burden required of claimant to show causation; that a mere coincidence or a possibility of a causal connection between the compensable injury and claimant's disabling stroke cannot be equated with causation. Further, appellants contend that the medical evidence dictates a finding in behalf of the appellants.

We do not agree with the appellants and accordingly, we affirm the Commission.

On appellate review, the evidece in a workers' compensation proceeding must be viewed in the light most favorable to the findings of the Commission. *Littlejohn* v. *Earle Industries*, 239 Ark. 439, 389 S.E. 2d 898 (1965); *Townsend Paneling, Inc., et al.*, v. *Butler*, 247 Ark. 818, 448 S.W. 2d 347 (1969). Indeed, the findings of the Commission have the same binding force and effect as a verdict of a jury and are treated in the same fashion, on appellate review, as a jury's verdict. *Wilson* v. *United Auto Workers International Union, et al.*, 246 Ark. 1158, 441 S.W. 2d 475 (1969). Moreover, the question for the appellate court is not whether the evidence would have supported findings contrary to the ones made by the Commission, but whether the evidence supports the findings made. *Reynolds Mining Co.* v. *Raper*, 245 Ark. 749, 434 S.W. 2d 304 (1968).

On July 10, 1978, Dr. Jerry L. Worrell, claimant's physician, advised claimant's attorney by letter:

"... I do feel that the above captioned patient's stroke which occured in the Baptist Hospital was a result of hypertensive vascular disease which had been diagnosed some four weeks prior to his coming in the hospital. I also feel medically that the hypertensive vascular disease predisposed this patient to arteriosclerosis, and since the patient had no symptoms with the hypertension we cannot say how long this had been present. I certainly feel that medically that people with arteriosclerosis of the cerebral blood vessels can and do have strokes when placed under unusual stressful situations. Certainly in this patient from his history he was extremely nervous, tense and apprehensive about a necessary procedure prior to his having surgery for his back. Certainly the anxiety and fear along with the apprehension very well contributed to the stroke occurring in the hospital prior to his having a myelogram. I should also mention in this report that patients experiencing severe pain as a result of a ruptured disc may very well have a stroke as a result of the severe pain associated with his back injury."

However, on October 19, 1978, in reply to appellant's at-

torney's request for claimant's physician to state specifically and unequivocally that the scheduled myelogram caused claimant's stroke, Dr. Worrell stated:

"...[T]his patient's hypertension did exist for at least one month prior to surgery and perhaps longer than this time since he had no symptoms at the time he was seen by his local physician. It is certainly a matter of conjecture as to whether or not anxiety in this patient would have precipitated a stroke prior to a myelogram. We have been asked to state specifically and unequivocally that the myelogram caused the stroke, and I had stated to Mr. Flenoy that this could not be done since the patient obviously had cerebral arteriosclerosis prior to the myelogram.

"I do realize all this information does hinge on the fact that the patient will or will not receive workmen's compensation, and I understand he is totally disabled due to the stroke.

"I do feel that the review board for workmen's compensation can appreciate our not being able to give you a specific answer as to whether the anxiety over a myelogram could produce or could not produce a stroke."

We do not perceive an absolute difference between Dr. Worrell's communication of July 10, 1978, and July 19, 1978, that would reduce his medical testimony to an uncertainty or an ambiguity and deprive it of any probative value.

Dr. Worrell's report of July 10, 1978, emphasized:

"Certainly the anxiety and fear along with the apprehension very well contributed to the stroke occurring in the hospital prior to his having a myelogram. *I should also mention in this report that patients experiencing severe pain as a result of a ruptured disc may very well have a stroke as a*

*result of the severe pain associated with his back injury."*
(Emphasis added)

While the medical report of July 19, 1978, stated: "It is certainly a matter of conjecture as to whether or not anxiety in this patient would have precipitated a stroke prior to a myelogram. We have been asked to state *specifically* and *unequivocally* that the myelogram caused the stroke . . .", Dr. Worrell did not retreat from his observation that a patient experiencing a ruptured disc may very well have a stroke as a result of the severe pain associated with his back injury.

It is not the responsibility of an appellate court either to weigh or determine the credibility of the medical testimony. If the medical testimony is conflicting, the resolution of the conflict becomes a question of fact for the Commission. *Dena Construction Company* v. *Herndon*, 264 Ark. 791, 575 S.W. 2d 155 (1979); *Barksdale Lumber Company* v. *McAnally*, 262 Ark. 379, 557 S.W. 2d 868 (1977); *Gordon* v. *J. A. Hadley Construction Company*, 256 Ark. 577, 509 S.W. 2d 287 (1974).

We hold that there is substantial evidence to support the decision of the Commission. Appellee is awarded the statutory attorney's fee of $250.00 for services rendered in connection with this appeal.

Affirmed.

PENIX, J., not participating.

HAYS, J., dissenting.

STEELE HAYS, Judge, dissenting. If substantial evidence supporting a causal relationship between claimant's stroke and his employment is to be found, it must be found in the medical opinion of Doctor Worrell or not at all. If that is so, as appears to be generally conceded by the arguments, then I am unable to say that this award is supported by substantial evidence. Doctor Worrell's report of July 10, 1978, might, possibly meet the test (giving it all the strongest probative weight and favorable inferences that the many decisions in

point require) were it not for his later and more definitive comments on October 19, 1978, the pertinent parts of which are quoted in the majority opinion. The basic premise of the second opinion is that whether the stroke was the result of claimant's anxiety over an impending myelogram was "certainly a matter of conjecture". This can hardly be called *substantial* evidence and, therefore, I would reverse. *Fagan Electric Company* v. *Green*, 228 Ark 477, 308 SW 2d 810 (1958); *Potlatch Forests Inc.* v. *Smith*, 237 Ark. 468, 374 SW 2d 166 (1964).