ARKANSAS DEPARTMENT OF CORRECTION
*v.* Aubrey E. CHANCE

.CA 80-369                                     609 S.W. 2d 666

Court of Appeals of Arkansas
Opinion delivered December 17, 1980
[Rehearing denied January 21, 1981.]

*Public Employee Claims Div., Ark. Insurance Dept.,* by:*Jerry G. James,* for appellant.

*McMath & Leatherman, P.A.,* by: *Phillip H. McMath,* for appellee.

JAMES H. PILKINTON, Judge. This is a workers' compensation case. Aubrey Chance is 56 years of age and was and is employed by the Arkansas Department of Correction. He claims that as a result of this employment he came into contact with an occupational disease, tuberculosis; that he has been temporarily and totally disabled at varying times as a result of this tubercular condition; that the statute of limitations has been tolled; and that the Tucker Unit of the Arkansas Department of Correction, where claimant worked, is in effect a "sanitorium" within the meaning of the Arkansas Workers' Compensation Act.

Mr. Chance was first employed by the Arkansas Department of Correction on December 7, 1970. After working a short time as a building security guard, he was assigned to the position of superintendent of maintenance at the Tucker Unit. He was responsible for maintaining the buildings, exterior and interior, on the Tucker prison farm. In February of 1974 Mr. Chance became engaged in remodeling work at the prison.

On one Sunday morning in June, 1976, Mr. Chance went to the Jefferson Hospital in Pine Bluff after he had felt bad all week. He was admitted to the hospital where he remained for approximately ten days under the care of Dr. S. H. Hoover. Following this period of hospitalization he returned to work and on August 2, 1976, while working at the prison rodeo, passed out and was hospitalized for ap-

proximately six days. Dr. A. G. Sullenberger was thereafter called in for consultation and, on August 26, 1976, claimant was again hospitalized and underwent surgery immediately. A few days later, Dr. Sullenberger advised claimant for the first time that he had tuberculosis. He later returned to work and in June, 1978, Mr. Chance was transferred from the Tucker Unit to a job site in Pine Bluff where he was still working at the time of the hearing.

On or about February 23, 1979, claimant filed an A-7 with the Arkansas Workers' Compensation Commission claiming benefits as a result of injuries to his lungs which he stated occurred on October 18, 1972, from "exposure to chlorine gas." About four months later, on June 26, 1979, claimant filed an amended A-7 which for the first time alleged "contraction of tuberculosis on the job as a result of exposure to contaminated inmates." The amended A-7 reflected a date of "June 13, 1976" as the date of the accident.

The Arkansas Department of Correction has controverted the claim in its entirety. The hearing below was limited to the issue of temporary total disability benefits, medical benefits, and attorney's fees, leaving open the issue of permanent disability for a later determination. It is the appellant's contention that claimant did not sustain an accidental injury arising out of his employment, there being no causal relationship between the tuberculosis condition and his employment; and alternately, appellant contends that if claimant's condition was causally related, the claim was barred by the statute of limitations, the last injurious exposure having occurred more than two years before the filing of the claim. Appellant further contends that claimant's condition was not a compensable occupational disease as defined by the workers' compensation law in effect at that time because the prison did not constitute a hospital or sanitorium as referred to and required by the applicable statute.

In an opinion, which was affirmed by the Arkansas Workers' Compensation Commission, the administrative law judge found that Mr. Chance had contracted tuberculosis in 1974 while working for appellant and that since the claimant had been receiving medical benefits under the group in-

surance plan of the State of Arkansas, the statute of limitations had been tolled. There was also a further finding that under the unique circumstances of this case, Tucker Prison Unit was a "sanitorium" within the meaning of the Arkansas Workers' Compensation Act. The Arkansas Department of Correction has appealed from the Commission's affirmation of the above findings.

Since this claim is one for benefits as a result of an occupational disease allegedly contracted in 1976 during the course of claimant's employment with appellant, we must review the provisions of the Workers' Compensation Act in effect at the time insofar as they relate to occupational diseases. Section 14 of the Act (Ark. Stat. Ann. § 81-1314) in effect in June, 1976, provides in part as follows:

> Section 14. Occupational Diseases: (a) General provisions: (I) Where an employee suffers from an occupational disease, as hereinafter defined, and is thereby disabled or dies as a result of such disease, *and the disease was due to the nature of the occupation or process in which he was employed within the period previous to his disablement as limited in subdivision (7) of this subsection,* the employee, or in case of death, his dependents, shall be entitled to compensation as if such disablement or death were caused by injury, except as hereinafter otherwise provided. (emphasis supplied)

The term "occupational disease" was further defined under that section as follows:

> (5) (i) 'Occupational disease' as used in this Act means any disease that results in disability or death and arises out of and in the course of the occupation or employment of the employee, or naturally follows or unavoidably results from an injury as the term is defined in this Act. *Provided, a causal connection between the occupation or employment and the occupational disease must be established by clear and convincing evidence.* (emphasis supplied)

Other provisions of the Act which are of significance are found in Sections 15 (5) (ii) and (iii) which provide:

(ii) No compensation shall be payable for any contagious or infectious disease, unless contracted in the course of employment in, or immediate connection with, a *hospital or sanitorium* in which persons suffering from such diseases are cared for or treated. (emphasis supplied)

(iii) No compensation shall be payable for any ordinary disease of life to which the general public is exposed.

As to the amount of compensation payable in the case of a compensable occupational disease, the law in effect in 1976 under Section 14 provided:

(6) ... the amount of compensation shall be based upon the average weekly wage of the employee when *last injuriously exposed* under such employer; and the notice of injury and claim for compensation, as hereinafter required, shall be given and made to such employer. (emphasis supplied)

One last section of the Act in effect in 1976 is found in Section 14 (7) and provides in part:

(7) An employer *shall not be liable* for any compensation for an occupational disease *unless* such disease shall be due to the nature of an employment in which the hazards of such disease actually exist, *and* are characteristic thereof *and* peculiar to the trade, occupation, process or employment, *and* is actually incurred in his employment. ... (emphasis supplied)

Initially it should be observed that in a claim for occupational disease, claimant cannot prevail on a mere "preponderance of the evidence." The law very explicitly requires that the causal connection between the occupation or employment and the occupational disease "must be established by *clear and convincing evidence*." (emphasis suplied). "Clear and convincing evidence" is defined in *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W. 2d 672 (1979).

There is not doubt that claimant now has tuberculosis.

However, after a careful study of the evidence, we have concluded that there is no substantial evidence in this record clearly and convincingly showing a casual connection between Mr. Chance's employment and his tubercular condition. Therefore we must reverse.

Some of the testimony apparently was intended to prove that claimant contracted tuberculosis from either inmate Gene McGahan in 1972 or from inmate Dale Pennington in 1974. Mr. Chance himself testified that he could not say how many months he worked with Gene McGahan but as far as he recalled it was all in 1972. As to inmate Pennington, claimant testified that this inmate was transferred to Tucker from Cummins in February, 1974, and that he worked in close contact with him eight or nine months during 1974 until Pennington was transferred inside to the tool room because he couldn't work outside. Mr. Chance further said during the period Pennington worked under his supervision, he at times drank from the same container after this inmate. The record shows that McGahan and Pennington were the only two active tuberculars with which Mr. Chance came in direct contact at the prison. After Pennington was assigned to the tool room, the exact date of which Mr. Chance could not remember, the only contact he had with him was when claimant was "in and out" of the tool room checking out tools from Pennington. This theory cannot be reconciled with the only medical proof in the record as to where or when the claimant contracted tuberculosis. In his report dated March 26, 1979, Dr. S. H. Hoover, claimant's treating physician, stated that Mr. Chance apparently contracted the disease some time in 1976.

George Allen Antonio, the infirmary supervisor for the Tucker Unit, testified that the last active case of tuberculosis at Tucker was Roger Dale Pennington in 1974 who was discovered on September 6, 1974 to have active tuberculosis. Pennington apparently was placed in the state hospital from which he escaped on October 30, 1974. He was returned to Tucker only one day on October 5, 1975, during which time he was kept in the isolation unit. There is absolutely no proof that Mr. Chance came in contact with Pennington after September 6, 1974.

The record does show that there were other inmates at Tucker who received treatment for inactive tuberculosis. Mr. Antonio said a pill called "I.N.H." was distributed to those inmates at "pill call" every day. He stated the prison would average having 40 or 50 inmates a year on what he termed "preventive medication" but "they were not contagious." He later said that he "believed" that about three per cent of persons with negative x-rays could pass the disease to others even though they were classified as having inactive tuberculosis. At the most, if this opinion is to be accepted, not over two out of the fifty at Tucker would likely fall within this three per cent. The record is completely devoid of any proof that Mr. Chance came into contact with any specific inmate under this treatment, and certainly there is no proof of any contact by him with any of the so-called three per cent of those who were receiving I.N.H.

On the state of this record the Commission would necesarily have to speculate as to if and when the "last injurious exposure" occurred. Even when the testimony is given its strongest weight in favor of the appellee, as we must do on appeal, the facts fall short of constituting substantial evidence necessary to prove by "clear and convincing evidence" when and where the disease was contracted. There is some conflict in the claimant's own proof on this point.

Having reached the conclusion that this case must be reversed and dismissed for lack of substantial evidence showing a causal connection between Mr. Chance's employment and his tubercular condition, we do not reach the other points raised by appellant.

Reversed and dismissed.

WRIGHT, C.J., concurs.

ERNIE E. WRIGHT, Chief Judge, concurring. I agree with the majority opinion in the reversal and dismissal of this case. However, in my view there is additional reason for reversal. Appellee seeks Workers' Compensation benefits for an alleged occupational disease. Benefits are provided by statute only for contagious or infectious disease contracted in the

course of employment in, or immediate connection with a hospital or sanitorium. I am unwilling to say the Tucker Unit of Arkansas Prison System, where appellee was employed, is a hospital or sanitorium.