ALCOA, Self-Insured Employer *v.*
Douglas VANN, Administrator of the
Estate of Raymond VANN, Deceased

CA 84-398                                    686 S.W.2d 812

Court of Appeals of Arkansas
Division II
Opinion delivered April 3, 1985

*Rose Law Firm, A Professional Association,* for appellant.

*Kenneth E. Buckner, P.A.,* for appellee.

DONALD L. CORBIN, Judge. Appellant Alcoa appeals the decision of the Workers' Compensation Commission awarding benefits to claimant Raymond Vann for an occupational disease. Appellee, Douglas Vann, represents Mr. Vann's estate on appeal as he is now deceased. The Commission found that Vann had developed an occupational disease, pleural mesothelioma, a malignant tumor of the lung, as a result of his exposure to asbestos during his employment with Alcoa. We affirm.

Ark. Stat. Ann. § 81-1314(5)(i) (Repl. 1976) defines occupational disease:

> "Occupational disease" as used in this Act, means any disease that results in disability or death and arises out of and in the course of the occupation or employment of the employee, or naturally follows or unavoidably results from an injury as that term is defined in this Act. Provided, a causal connection between the occupation or employment and the occupational disease must be established by clear and convincing evidence.

Ark. Stat. Ann. § 81-1314(7) (Repl. 1976) provides:

> An employer shall not be liable for any compensation for an occupational disease unless such disease shall be due to the nature of an employment in which the hazards of such disease actually exist, and are charac-

teristic thereof and peculiar to the trade, occupation, process, or employment, and is actually incurred in his employment. . . .

Ark. Stat. Ann. § 81-1314(5)(iii) (Repl. 1976) provides:

No compensation shall be payable for any ordinary disease of life to which the general public is exposed.

These statutes require that a causal connection between the claimant's disease and his occupation be established by clear and convincing evidence and that the disease be: (1) a result of the nature of that particular employment or occupation; (2) be actually incurred in the employment; and (3) not be an ordinary disease of life. Clear and convincing evidence has been described by our Supreme Court as "that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established." *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979), citing *Brown* v. *Warner*, 107 N.W.2d 1 (1961).

In reviewing decisions of the Workers' Compensation Commission, we are limited to determining whether there is any substantial evidence to support the Commission's findings. *Ridgeway Pulpwood* v. *Baker*, 7 Ark. App. 214, 646 S.W.2d 711 (1983). In reviewing the Commission's finding that Mr. Vann developed an occupational disease, we must affirm unless we determine that fair-minded persons could not have found clear and convincing proof of the causal connection between the disease and Vann's employment. *Clark* v. *Peabody Testing Services*, 265 Ark. 489, 579 S.W.2d 360 (1979).

The Commission found that Vann's mesothelioma was caused by his exposure to asbestos during the 27 years he was employed at the Alcoa plant. Appellant argues that there was insufficient proof that Vann's exposure to asbestos while employed with Alcoa caused his mesothelioma.

After thoroughly reviewing the record, we believe there was sufficient evidence to support the Commission's finding that Vann had proved a causal connection between his

mesothelioma and his asbestos exposure at Alcoa by clear and convincing evidence.

Vann worked as a machinist for Alcoa from 1954 until his mesothelioma was diagnosed in 1981. He had several jobs prior to his employment with Alcoa. He began working for the Missouri Pacific Railroad in 1936 as a messenger boy and material hustler and eventually became a machinist's apprentice. In 1944 he entered the Navy and was discharged in 1946. He resumed railroad work in 1946 and continued to work for railroads until the early 1950's. He worked for short periods of time at the Pine Bluff Arsenal, the Timex plant, and Redmond Motors prior to his employment with Alcoa.

Vann's testimony clearly indicates that he had substantial exposure to asbestos during his years of work with Alcoa. His primary exposure to asbestos occurred when he overhauled turbines. The average overhaul took about six weeks. The turbines were surrounded by an asbestos cover which other workers removed so that the machinists could do their work. Although large blankets of asbestos were removed, a substantial residue of asbestos remained. Vann had to crawl under the turbines and knock bolts loose which would cause the asbestos residue to fall on him.

Vann also wore mittens and aprons made of asbestos in handling the hot materials that were used around the heat treating furnace. He testified that the material from the gloves and aprons would flake off after the items became worn. He also used asbestos rope and worked with asbestos gaskets and asbestos packing material, replacing the old packing and gasket material with new asbestos. In making new gaskets, Vann testified that prior to obtaining a circular gasket cutter in the 1960's, he had to cut gaskets from 4 x 8 sheets of asbestos material by laying the sheet over the edge of a table and hammering on the edge to cut the material. Asbestos particles from these sheets would break loose and become suspended in the air. It was only in later years that Alcoa provided Vann any breathing protection in the form of a double respirator to use while working on transite pipe which was made from compressed asbestos.

Two of Vann's supervisors, William T. Snow and George B. Mooney, corroborated Vann's testimony, describing heavy asbestos exposure especially during the 1950's and early 60's.

Vann also described his asbestos exposure prior to his employment with Alcoa. When he worked as a machinist mate in the Navy, he was involved in the repair of an asbestos covered pipe that ruptured while aboard ship. During his railroad work Vann testified that he did not work directly with asbestos in doing railroad machinist work but did work on boilers which were insulated with asbestos encased in metal covers. Vann testified that he worked with fiberglass but to what extent was not developed in the record. He testified that there was no asbestos used in the job at the Pine Bluff Arsenal, in the shop at Redmond Motors or at Timex.

The Commission heard medical testimony from three physicians who offered opinions relating to Vann's relative asbestos exposures and the cause of his disease. It was the opinion of Dr. Jacob Amir, one of Vann's treating physicians and an oncology specialist, that based on his treatment of Vann and the history given him by Vann, that Vann's mesothelioma was the result of his exposure to asbestos while working at the Alcoa plant. Dr. Amir pointed out that the vast majority of people develop mesothelioma from industrial exposure to asbestos as opposed to any casual exposure.

Dr. Arthur Squire, another of Vann's treating physicians and a specialist in internal medicine and pulmonary diseases, testified that exposure to asbestos was well documented as the causal factor in developing mesothelioma. He felt that Vann's mesothelioma was due to exposure to asbestos at Alcoa. His opinion was based in part on the detailed 27-year history of continuous asbestos exposure with Alcoa and the fact that such exposure so nearly described the "text book" example.

Dr. Joseph Bates, Chief of Medical Services at the Veteran's Administration Hospital and Vice-Chairman of the Department of Internal Medicine at the University of

Arkansas School of Medicine, felt that there was no way of determining if Vann's mesothelioma was the result of his exposure to asbestos while working in the Alcoa plant. He pointed out that many people who contracted mesothelioma had no known exposure to asbestos; that the lag time for those with asbestos exposure averaged 38 years; that there was little evidence that asbestos related mesothelioma was dose related; and that fiberglass exposure could also be a cause of mesothelioma.

The Commission found the evidence to be clear and convincing that Vann had developed mesothelioma as a result of his heavy asbestos exposure while employed with Alcoa. There is substantial evidence to support this finding. The testimony clearly details Vann's direct asbestos exposure during his 27 years with Alcoa. The testimony also indicates that Vann's asbestos exposure prior to his employment with Alcoa was more or less indirect and infrequent. As for the conflicting medical opinions, it is for the Commission to make findings concerning the weight and credibility of the testimony. *Gordon* v. *Hadley Construction Co.,* 256 Ark. 577, 509 S.W.2d 287 (1974). There is no requirement that a finding by the Commission be based on evidence which is medically certain. *Kempner's* v. *Hall,* 7 Ark. App. 181, 646 S.W.2d 31 (1983). We cannot say that fair-minded persons would not be convinced that Vann's asbestos exposure was attributable to his employment with Alcoa.

Appellant relies on *Ark. Dept. of Correction* v. *Chance,* 271 Ark. 472, 609 S.W.2d 666 (Ark. App. 1980) to support his argument that the evidence was insufficient. In *Chance,* this Court reversed a finding by the Commission that the claimant had contracted tuberculosis as a result of exposure to contaminated inmates at the prison farm where he was employed. *Chance* can be distinguished from the case at bar. In *Chance,* the court noted that the record was completely devoid of any proof that Mr. Chance came into contact with any specific inmate under treatment for tuberculosis, and that there was no proof of any contact by Mr. Chance with any of the three per cent of the inmates receiving treatment for inactive tuberculosis. The court in

*Chance* went on to state:

> On the state of this record the Commission would necesarily [sic] have to speculate as to if and when the "last injurious exposure" occurred. Even when the testimony is given its strongest weight in favor of the appellee, as we must do on appeal, the facts fall short of constituting substantial evidence necessary to prove by "clear and convincing evidence" when and where the disease was contracted. There is some conflict in the claimant's own proof on this point.

Whereas, in the case at bar, the facts definitely point to claimant's regular and direct exposure to asbestos at Alcoa's plant for some 27 years.

Also, under *Sanyo Manufacturing Corporation* v. *Leisure*, 12 Ark. App. 279, 675 S.W.2d 841 (1984), the facts in *Chance* fall short of meeting the criteria necessary for a finding of an occupational disease. In *Sanyo*, this Court pointed out that in order to qualify as an occupational disease, the disease must be one, the hazard of which is peculiar to the particular process or employment. The hazard of contracting tuberculosis was not characteristic of the claimant's work at the prison farm in the *Chance* case. In Mr. Vann's situation, however, the hazard of contracting an asbestos related disease was characteristic of his work at Alcoa where exposure to asbestos was so prevalent.

While there is evidence to the contrary, we cannot say that fair-minded persons could not have been convinced that Vann's mesothelioma was attributable to his asbestos exposure at Alcoa based upon the evidence in the record. Therefore, we affirm.

Affirmed.

CRACRAFT, C.J., agrees.

GLAZE, J., concurs.