## Ruth Butler LINDSEY *v.* ARKANSAS CEMENT Company, Employer and UNITED STATES FIDELITY AND GUARANTY Company, Insurance Carrier

74-72                                    510 S.W. 2d 552

### Opinion delivered June 24, 1974

*Harness, Friedman & Kusin,* for appellant.

*Tackett, Moore, Dowd & Harrelson,* for appellees.

CARLETON HARRIS, Chief Justice. This is a workmen's compensation case, arising out of a fall by claimant, Ruth Butler Lindsey, appellant herein, while she was employed by Arkansas Cement Company, appellant contending that she suffered certain injuries as a result of the fall. The referee held the claim compensable, but on appeal to the full commission, that tribunal, though finding that claimant suffered a fall while in the course of her employment, also found that her subsequent complaints were not causally related to the fall of August 18, 1971. The claim was denied, and on appeal to the Little River County Circuit Court, the order of the commission denying and dismissing the claim was affirmed. From the judgment entered by the circuit court, appellant brings this appeal. For reversal, it is urged that there was no substantial evidence to support the findings of the commission, and it is insisted that a preponderance of the evidence, reasonable doubts being resolved in favor of the claimant, necessitated an award in favor of claimant.

There is no dispute but that Mrs. Lindsey, employed in

the billing department of the company, fell on August 18 while she was engaged in her duties at the cement company. She testified that her supervisor buzzed for her to come to his office and get a rubber stamp; that she "is always in a rush", and she hurriedly went around the corner to get to her desk and hit a plug in the floor, started slinging her hands to prevent falling, and fell on her back. Two other employees witnessed the fall, but their versions were quite a bit different from that of claimant. Cathey Lisenby, who typed invoices, worked in the office with Mrs. Lindsey, and she described the fall as a "slow fall" and not at all "hard". She said that Mrs. Lindsey's right arm landed on her (Mrs. Lisenby's) leg and that the only part of claimant's body which touched the floor was her buttocks. Mrs. Lisenby testified that claimant's shoulder did not hit the floor or "anything else." Bill Pullen, an assistant office supervisor, said that when he looked from his desk, he saw Mrs. Lindsey sitting on the floor with her hands in her lap; that she stated she was not hurt, picked up her papers, and went back to the supervisor's office.

Mrs. Lindsey continued to work, but on September 9, she took her husband, who had the flu, to Dr. Richard B. Dickenson, a physician of DeQueen, and at the time, complained that her shoulder and hand hurt. Dickenson found that she was suffering from bursitis, gave her a shot, and stated that she made no complaint to him of having received an injury. He did not see her again. About a week later, she went to see Dr. Barry Green, an orthopedic surgeon of Texarkana, Texas, who diagnosed her problems as subdeltoid bursitis and carpal tunnel syndrome.[1] She gave no history to Dr. Green at the time of having suffered any injury. Dr. Green testified that there is no specific cause for bursitis; that "people can just develop bursitis." He also said that a numbness she complained of in her right hand and wrist could not have been caused by any disability suffered in her right shoulder. In referring to the wrist, he mentioned that she was a typist and that he had treated patients with the same syndrome who were typists (though he had treated many who were not typists) but the "constant flexion extension of the wrist in the typing process can cause it."

[1] The medical testimony reflects that the carpus is the wrist bone and a carpal tunnel syndrome is compression of the median nerve by the transverse metacarpal ligament.

Claimant testified that she went to Dallas on October 6 to see Dr. Thomas Caldwell, a nerve specialist, because Dr. Green suggested that she should have the condition of her nerves checked. Dr. Greene saw Mrs. Lindsey on several occasions between the first visit on September 16 and when he performed an operation for the carpal tunnel condition on November 10, 1971. Thereafter, he saw her on several occasions through 1971, and suggested that she go to Dr. Warren Long in Shreveport. In early January, she went to Dr. Long, returned to Little Rock, and thereafter, around February 11, 1972, Dr. Greene found that she had a condition known as "causalgia."[2]

On March 10, 1972, Mrs. Lindsey went to Dr. Harold Chakales of Little Rock, who placed her in the hospital for tests. These tests revealed the condition of causalgia. Dr. Chakales also stated:

"During this hospitalization I also checked out her brain, we did echo-encephalogram, which was normal, checked out her heart, skull films were normal, x-ray of the cervical spine did show some slight straightening of the cervical lordosis, compatible with symptomatic arthritis of the neck.

"We also felt that Mrs. Lindsey was an extremely nervous patient and she borders on psychoneurosis, and that this condition had gotten to the point that it was really about to get her down. ***

"She was subsequently admitted to St. Vincent's Infirmary by Doctor John Baber and Doctor William Hayden, who had Doctor Harold Hawley, Psychiatrist, evaluate her, before they even considered operating on her, and they concurred that a sympathectomy would be indicated. A significant fact was the fact that during the hospitalization at Memorial, we had the Anesthesiologist, Doctor Weare, perform a stellate

[2]Dr. Greene defined causalgia as "a disturbance in the autonomic nerves which supply an extremity and no one knows the exact pathophysiology other than it's a reflex mechanism where the sympathetic nerves are over stimulated. Now, why they become over stimulated, no one knows this. What happens is, the nerves received abnormal stimulation. This develops recurrent pain and the patient then does not use the part."

ganglion block, with local anesthetic, stick a needle in the stellate ganglion—and she had marked relief, she had a lot of relief from her pain and this is why I recommended a stellate ganglionectomy and Doctors Baber and Hayden[3] subsequently operated on her."

Dr. Greene testified that one could only speculate as to the cause of claimant's ailments, though Dr. Chakales, after being asked about the various complaints, *viz.* bursitis and pain in the right forearm, right wrist, neck, back and lower extremities, stated:

"I will put it like this, from the history that the patient gives me, if what she tells me is the truth and it is substantiated that she did fall and hurt her shoulder, then I would say that the traumatic episode was the precipitating cause and what we are seeing is a long drawn out course."

Of course, the finding of the commission, after reviewing the testimony of claimant and those who witnessed the fall, as well as the testimony of all physicians, was that there was no causal relationship between such fall and the complaints that she subsequently made, and the commission opinion mentions that she did not give a history of a fall to any physician until she was observed by Dr. Long in Shreveport, Louisiana, on January 6, 1972. This, of course, would be about four and one-half months after the fall, and it is, to say the least, unusual, that she did not mention this alleged accident to doctors she consulted, particularly since she testified that she started hurting the next day after the fall, and the record reflects that she had contacted several doctors before seeing Long. In *Wilson* v. *United Auto Workers*, 246 Ark. 1158, 441 S.W. 2d 475, this court said:

"In considering this case, it is necessary that we keep in mind basic fundamentals concerning review of workmen's compensation cases. The burden was on the claimant to show that the injury arose in the course of the employment and grew out of or resulted from the employment. *American Casualty Co.* v. *Jones*, 224 Ark. 731,

[3]There is no testimony by these doctors in the record.

276 S.W. 2d 41. The findings of the Workmen's Compensation Commission have the same binding force, effect and verity as the verdict of a jury and are treated in this court in the same manner as a jury verdict. *Kelley* v. *Southern Pulpwood Co.*, 239 Ark. 1074, 396 S.W. 2d 305; *American Casualty Company* v. *Jones*, 224 Ark. 731, 276 S.W. 2d 41. In doing so, we must accept that view of the facts which is the most favorable to the commission's findings. *Albert Pike Hotel* v. *Trapner*, 240 Ark. 958, 403 S.W. 2d 73; *Burrow Construction Co.* v. *Langley*, 238 Ark. 992, 386 S.W. 2d 484; *Elm Springs Canning Co.* v. *Sullins*, 207 Ark. 257, 180 S.W. 2d 113. We must also keep in mind that the commission must determine the extent to which credit is given to testimony, even when it is undisputed. [Citing cases.]."

After a careful review of the record in this case, we are unable to say that the findings and order of the commission were not supported by substantial evidence. That being true, it follows that the judgment of the Little River County Circuit Court should be, and hereby is, affirmed.

It is so ordered.